# CHARLESTON.

E. L. BRIERS *et al.* AND G. H. SMITH *et al.* v. G. S. ALDERSON

(No. 5535)

Submitted May 11, 1926.     Decided May 18, 1926.

1. CORPORATIONS—*Dedication by Agent of Property of Corporation to Public Use Must be Authorized or Ratified by Board of Directors to Bind Corporation.*

   A dedication by an agent of the property of a corporation to public use must be authorized or ratified by the board of directors in order to bind the corporation.   (p. 664.)

   (Corporations, 14a C. J. § 2269.)

2. SAME—*Ratification of Dedication by Agent of Corporation May be Implied From Acquiescence of Board of Directors, Where Dedication is Made Under Such Circumstances and Given Such Notoriety That Board Will Be Presumed to Have Known of it.*

   Ratification of such dedication may be implied from the acquiescence of the board of directors, where the dedication is made under such circumstances and given such notoriety that the board will be presumed to have known of it.   (p. 665.)

   (Corporations, 14a C. J. § 2228.  Dedication 18 C. J. § 14.)

3.  MUNICIPAL CORPORATIONS—*Private Citizen, Suffering Special
    Injury From Obstruction in Street, May, on Proper Show-
    ing, Obtain Injunction.*

    A private citizen who suffers special injury from an ob-
    struction in a street, and is interested in preventing its con-
    tinuance, may, upon a proper showing, obtain injunctive
    relief.  (p. 667.)

    (Municipal Corporations, 28 Cyc. p. 901.  Streets and Highways,
    37 Cyc. p. 254.)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not
    part of syllabi.)

Appeal from Circuit Court, Summers County.

Suits by E. L. Briers and others and G. H. Smith and others
against G. S. Alderson for injunctions, consolidated and heard
together.  From a decree for plaintiffs, defendant appeals.

*Modified and affirmed.*

*Thos. N. Read* and *E. C. Eagle,* for appellant.

*R. F. Dunlap, M. F. Matheny,* and *Jas. H. Miller,* for
appellees.

HATCHER, JUDGE:

In the latter part of 1908 the Hinton-Bellevue Realty Com-
pany purchased from A. E. and C. L. Miller a tract of land
situate at the junction of New and Greenbrier Rivers in
Summers County.  Shortly after this purchase a large part of
the tract was laid off in lots and streets, given the name of
"Bellepoint", a plot thereof filed in the Clerk's office, and
many lots sold in accordance with the plat and survey.
Major J. C. Alderson acted as the agent and general manager
of the Realty Company for several years following the pur-
chase of this property.  In 1914 the defendant G. S. Alder-
son became manager, which position he held until Septem-
ber, 1923, when he purchased the Realty Company's interest
in the unsold parts of the Bellepoint property.

In the survey of Bellepoint, a long, steep, and rough strip
averaging twenty-five feet in width and lying between a
street and Greenbrier River was not plotted into lots.  A
printed map of Bellepoint, filed with the bill, is alleged to be

a copy of the map filed in the Clerk's office.* On this copy the word "Vacant" is written in ink on this strip. The correctness of the map is not questioned. Since defendant's purchase in 1923, he has constructed several buildings on this strip.

The suit of Briers *et al.* against G. S. Alderson was brought in the circuit court of said county by lot owners in Bellepoint, who claim that the strip was dedicated to the use of the public by the Realty Company, and who pray that the defendant be enjoined from further use of said strip, and that he be required to remove the buildings he has erected thereon. From a decree in favor of the plaintiffs, the defendant has appealed.

The evidence shows that Major Alderson announced at a public auction sale of the Bellepoint lots in 1909 that no buildings were ever to be erected on the land between the street and Greenbrier River. It was also proven that he made similar statements to many lot purchasers, that he further said the strip was to be put in grass and to belong to everyone, and that the view of the river from the lots was never to be obstructed by anything on the strip. Following these statements, all structures on the strip, including a chicken coop, a pig pen, and an old mill, were removed. The plaintiffs bought and improved lots in Bellepoint on the faith of these statements. There is no denial in the evidence of these declarations.

There is no proof or minute of the Realty Company showing that the Board of Directors ever expressly authorized Major Alderson to dedicate the strip to public use, or specifically ratified such dedication. The defendant was a Director of the Company at the time Major Alderson made the statements, and he testified that he did not know of them. The Vice President and the Secretary of the Company at that time, however, were among the witnesses who testified of hearing Major Alderson state that no buildings were ever to be erected on the strip. Seven witnesses for plaintiffs swear that during the period the defendant was manager of the Company, he stated to each of them that there were to be no buildings erected on the strip. The defendant denies the testi-

mony of these seven witnesses. If plaintiffs' evidence on this point needs support in order to preponderate over that of the defendant, it appears in the fact that during the many years defendant was manager of the Company, he never attempted to sell any part of the strip. Defendant contends that the Company never ratified or approved the declarations of Major Alderson, and that such ratification or approval was necessary to constitute a valid dedication of the strip to public use. He relies on *Hast* v. *Railroad Co.*, 52 W. Va. 396, which holds: "A dedication by a railroad corporation, to bind the corporation beyond revocation, must be made by the directors, or recognized by them in some way, or be expressly ratified by them, or by such public use for such time and under such circumstances as to justify the inference of such ratification. The mere act of officers and agents making such dedication, without authority from the directors, will not make a valid dedication, unless by such express or implied ratification." We find that the facts proven in this case bring it squarely within the above authority. There seems to be entire unanimity among the decisions that in interpreting maps and plats all doubts as to the intention of the owner of the land are to be resolved most strongly against him, and when words are employed which ordinarily indicate a public use, such as "Public grounds", "Not to be occupied by buildings", "Parks", "Commons", etc., they will generally be construed to imply an intention on the part of the owner to dedicate the area so marked to the public. 8 R. C. L. 896; 18 C. J. 63; Elliott Roads and Streets, par. 199. On the map adopted by the Realty Company the strip is marked "Vacant". This word can undoubtedly be classified with the words and phrases above, indicating an intention on the part of the Company to keep the strip so marked for public use. Our decision, however, need not be based on a construction of the word "Vacant". The dedication by Major Alderson was made under such circumstances and given such notoriety that the Board of Directors of the Company must have known of it. The Board must also have known that people were buying lots on the faith of this dedication. Only by inattention and neglect

of duty could the Board have remained ignorant of these facts. The Company was in existence more than ten years after Major Alderson made the dedication. During this period no attempt by the Company to sell any of this strip, or to repudiate the statements of Major Alderson, is shown. Under such circumstances we must hold that the authority to make the dedication was either expressly given to Major Alderson, or that his statements were subsequently ratified by the Company. "Acquiescence of the board of directors of a corporation in the exercise of powers and authority by its officers and agents, which it could have conferred upon them but has not expressly conferred, with actual or constructive notice of such assumption and exercise thereof, amounts to an implied delegation of such powers and authority." *Hartley et al.* v. *Woodenware Co.*, 82 W. Va. 780. Accord 14a C. J. 368, par. 2228, 373, par. 2232, 382, par. 2238; 4 Fletcher Cyc. Corp. pars. 2178, 2195.

A bridge across Greenbrier River abuts on the strip. On either side of this abutment a building was erected many years ago. The defendant relies on the fact that these buildings have been allowed to stand, as a refutation of a public dedication. A. E. Miller, who was one of the grantors of the Realty Company, testified that the lots immediately above and below the bridge were never conveyed to the Company; that he and C. L. Miller conveyed them originally to the Foss Bridge Company, which later sold the bridge to the County Court of Summers County; that the lots were reserved by the Bridge Company, which later reconveyed them to A. E. and C. L. Miller. It was on these lots that the buildings to which defendant refers were erected. C. L. Miller confirmed the testimony of A. E. Miller in this respect, and explained that at the time the Bellepoint property was sold to the Realty Company, it was agreed with the Realty Company that the grantors would reserve from the conveyance forty feet above and seventy below the bridge; that in making the deed a mistake occurred, whereby the grantors reserved only fourteen feet below the bridge instead of the seventy feet agreed upon; and that when the mistake was later discovered, Major Alder-

son had the Company correct it.   The deeds as to the fore-
going transactions are filed as exhibits with the evidence, and
there is no denial of the testimony of the Millers in this re-
spect.   Consequently it appears that the lots adjoining the
bridge have never been the property of the Realty Company,
and are not subject to the dedication made of the rest of the
strip, by Major Alderson.

We realize that the decree of the Circuit Court in requiring
defendant to remove from the strip the buildings already
erected thereon will work a hardship on him.   However, he
has only himself to blame.   At a time when he had put in the
foundation of only one of these buildings, he was served with
written notice by lot owners in Bellepoint that the strip had
been dedicated to public use, that they objected to any build-
ings being erected thereon, and that they expected to main-
tain their rights thereto at law.   The greater part of defend-
ant's expenditures were made after receiving this notice.

The decree of the lower court in so far as it applies to the
suit of Briers et al. v. Alderson, will therefore be affirmed.

The suit of Smith and Franklin v. G. S. Alderson seeks to
enjoin him from using the streets of Bellepoint for the storage
of building and other material, as well as from using the
strip along the river.   This suit was consolidated and heard
with that of Briers et al. v. Alderson.   In its decree the lower
court found that the defendant had obstructed Central Avenue
in front of the property occupied by the plaintiffs, at the
junction of Central Avenue and Maple Street, and enjoined
him from ''piling and storing sand, gravel, building material
and debris on Central Avenue and Maple Street for storage
purposes, as alleged and claimed by Plaintiffs, G. H. Smith
and W. O. Franklin''.

The proof shows that defendant kept large piles of sand,
gravel, logs, etc., stored in the streets of Bellepoint for months
at a time.   Even the witnesses for defendant so admit.   This
storage was in front of a lot owned by Smith's wife.   Smith
had built a house on this lot, and resided there.   He testified
that the material piled in the street stopped up the ditch and
caused water to overflow his garden.   This storage therefore

caused Smith *special injury*, not suffered by the public at large, and thus gave him the right to seek injunctive relief. 37 Cyc. 253; 13 R. C. L. 227; *Colliery Co.* v. *Town of Harding*, 83 W. Va. 609. ''In addition to the right of the public to maintain a suit in equity for an injunction, private citizens who are specially injured by an obstruction and interested in preventing its continuance may, upon a proper showing, maintain a suit in equity for an injunction. But unless a special injury is shown, the plaintiff will not be entitled to an injunction. It has also been held that the injury must be irreparable, or at least not capable of full and complete compensation in damages. This is no doubt a fair statement of the general rule, but the phrase ''irreparable injury'', is apt to mislead. It does not necessarily mean, as used in the law of injunctions, that the injury is beyond the possibility of compensation in damages, nor that it must be very great. And the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere in cases where the nuisance is a continuous one." Elliot *supra*, par. 850.

Plaintiff Franklin lived in rented property near Smith. The evidence is not clear that defendant's material extended to the Franklin property. Franklin testified to no special injury to him from the obstruction and none appears from the evidence.

We therefore hold that the decree of the lower court should be modified to inhibit defendant from storing material on the streets of Bellepoint in such a manner as to cause special injury to Plaintiff Smith. When so modified the decree will be affirmed.

*Modified and affirmed.*