220 

THE PENNSYLVANIA COMPANY FOR INSURANCES ON LIVES AND GRANTING ANNUITIES, a corporation existing under the laws of the Commonwealth of Pennsylvania, Trustee,

*vs.*

THE SOUTH BROAD ST. THEATRE CO., a corporation existing under the laws of the Commonwealth of Pennsylvania, A. L. ERLANGER REALTY CORPORATION, a corporation of the State of Delaware, MITCHELL L. ERLANGER and HARRY J. J. O'NEILL, Trustee in Bankruptcy for The South Broad St. Theatre Co., a corporation existing under the laws of the Commonwealth of Pennsylvania.

*New Castle, July 2, 1934.*

*Aaron Finger*, of the firm of Richards, Layton & Finger, and *Philip Werner Amram*, of Philadelphia, Pa., for complainant.

*Charles C. Keedy*, of the firm of Keedy & Duane, for A. L. Erlanger Realty Corporation.

THE CHANCELLOR: There is no controversy in this case over questions of fact. The controversy is over the significance of, and the effect which equity draws from, the undisputed facts. Particularly stated, the question is whether the payment of the total of thirteen thousand dollars referred to in the statement of facts by the Theatre Company to the Realty Company was, under the circumstances shown, such a payment as constituted an inequitable preference. This court held in *Amussen v. Quaker City Corp.*, 18 *Del. Ch.* 28, 156 *A.* 180, that the directors of an insolvent corporation which is in failing circumstances and manifestly headed for disaster, may prefer one creditor over another as fully as may an individual. In that case, the preferred creditor was neither a director nor a stockholder.

In this case, however, the creditor which was paid, the Realty Corporation, though not of course a director, as it could not be, nor a stockholder, is nevertheless claimed by the complainant to be in contemplation of equity in the status of both a director and stockholder. If such be true, the case of *Amussen v. Quaker City Corp.* is differentiable.

The first question to be answered in the pending suit is whether or not the Realty Corporation is in the status which the complainant assigns to it. If it is not, the *Amussen Case*, to which I adhere, would require a dismissal of the bill. If it is, then it becomes necessary to consider the question, which was noticed but not decided in the *Amussen Case*, of whether a director-creditor may be preferred by his insolvent corporation equally with a stranger-creditor.

Is then the Realty Corporation, in the eyes of equity, though not in point of formal fact, in the status of a

director-creditor? If we look beneath the surface of appearances, I do not see how it can be denied that the Realty Corporation was in the status to which the complainant assigns it. Mitchell L. Erlanger was the dominant person, I conclude, in the Realty Corporation which loaned the money and in the Erlanger Enterprises which owned forty per cent. of the stock of the borrowing Theatre Company. He was president and director of the Theatre Company when the payment of thirteen thousand dollars was made. He signed the two checks for that amount. So far as the minutes show, he was not authorized to do so by the directors. Furthermore, I cannot escape the conclusion that in so far at least as the interests of the Realty Corporation were concerned, the directors of the Theatre Company, if they were not subservient to, were at least responsive to, his wishes. Had his influence been removed, it appears quite certain that the Realty Corporation might have been treated with no favor. At all events, I would be blind to what experience with human nature daily teaches, if I did not believe that Mr. Erlanger, with his intimacy of association with all the parties interested in the Theatre Company and his business and financial relations with them, was in a position to secure compliance with his wishes. Even if the directors did vote in favor of the payment by the Theatre Company, as he says notwithstanding the silence of the minutes, no better face would be put upon the matter.

It thus appears that Erlanger was in a position of power greater than ordinarily inheres in the bare office of director. What he had in his power to induce the Theatre Company to do and what it actually did in the matter of the thirteen thousand dollar payment inured to the benefit of the Realty Corporation of which he was then a two-thirds owner and his sister the owner of the other third. Can the fact that the corporation in which he was so largely interested was the creditor benefiting by the payment, give to the transaction a complexion different from what it would have if he individually had been the creditor-recipient? I

think not. *Central Trust Co. v. Southern Oil Corp.*, (*C. C. A.*) 8 *F.* (2*d*) 338; 15 *Fletcher, Cyclopedia of Corporations*, (*Per. Ed.*), § 7477. For the purposes of this case, the Realty Corporation is the alter ego of Erlanger, president, director and persuading if not controlling influence in the Theatre Company.

Was the Theatre Company insolvent? Whether it was believed to be insolvent in November, 1930, when the Realty Corporation made the loan to it, is of no importance. The important question is—was it insolvent when the payments of eight thousand dollars and five thousand dollars were made in 1932 on March 4th and 5th respectively? On that question, the evidence admits of no doubbt. There is no occasion to review it. The directors knew on March 3, 1932, that the company was done for. They were willing to abandon its only asset of great importance by surrendering it to the mortgagee. The company was unquestionably insolvent when the payments were made to the Realty Corporation.

We have then, in substance though not in form, the question presented by this case of whether an insolvent corporation on the eve of its collapse may apply its cash resources to the liquidation of the debt owed by it to one of its directors, who is at the same time its president.

This question was looked at but not decided in *Amussen v. Quaker City Corp.*, *supra*. In that case this court stated by way of dictum that while the general rule allows an insolvent corporation which has no hope of continuance to prefer one creditor over another, yet the decided weight of authority denied to a director-creditor the benefit of the general rule. That dictum is now accepted by this court as correctly expressive of the law. It is not deemed necessary to review the authorities which deal with the question. They may be found cited and reviewed in the annotations found in the American Law Reports as follows: 19 *A. L. R.* 334; 38 *A. L. R.* 92; 48 *A. L. R.* 479; 56 *A. L. R.* 208; 62 *A. L. R.* 739. The possible situations which might exist

whereby a director-creditor might claim the benefit of the general rule need not be examined, for in this case no peculiar and special circumstances appear which supply an equity in the director-creditor's favor.

It is argued, however, that there is a special circumstance in this case which ought to operate in favor of allowing the director-creditor the same position as a stranger. That circumstance is that the money which the Realty Corporation loaned was paid over to the complainant. It was so paid, on account of the arrearages under the mortgage. But what of it? The complainant gave a consideration for the payment in the form of a promise to extend the maturity date of the bonds. It is impossible to see why the Realty Corporation, because it loaned money to the debtor in order to put it in the way of obtaining an extension of credit and save itself from immediate collapse should be permitted to push itself forward in an inequitable manner ahead of the creditor whose indulgence had been obtained. The material question here is not what use the debtor made of the money. It is, was the repayment made under such circumstances as to be open to attack?

The principle upon which the rule rests that forbids a director-creditor to enjoy a preference over others in the circumstance of the company's insolvency, is variously stated. By most of the authorities it is posited on the so-called "trust fund theory" by which capital assets are said to constitute a trust fund for creditors. By others it is said to be based on the inequity of allowing a director to take advantage of the superior means of information which he enjoys over other creditors, conjoined as it is with a power or influence which enables the possessor to reap a personal advantage over others whose claims are equally meritorious. Let the theory under the rule be phrased as it may, analysis in the end will resolve all the reasons underlying the rule into the one simple proposition that it is, as stated by Judge Kenyon in *Stuart v. Larsen*, (*C. C. A.*) 298 *F.* 223, 227, but "merely applied common honesty" that a

director of an insolvent corporation should not be allowed as it sinks to take advantage of his position by rushing ahead to a place in the life boat, if I may use the figure, ahead of his fellow passengers. The trust fund doctrine, if it be accepted as it is by perhaps a majority of the courts as the foundation of the rule, is supposed by some to possess certain logical consequences which lead to a result incompatible with the rule. Yet that doctrine if traced to its source appears to be nothing more than a particular expression of the fundamental principle which good morals exact, that men should act in honesty and fairness. So far as I am informed, the so-called trust fund doctrine received its first pronounced recognition in a case before Mr. Justice Story when on circuit in 1824. *Wood, et al., v. Dummer, et al.,* 30 *Fed. Cas.* 435, *No.* 17,944, 3 *Mason,* 308. He referred in his opinion to the earlier case of *Vose v. Grant,* 15 *Mass.* 505, as recognizing the doctrine. The Massachusetts case is the earliest one in this country at least which has come under my observation as supporting the doctrine. That case may be called the spring to which the doctrine traces its source. In that early case the court said that if stockholders of an insolvent and failing corporation favored themselves as against creditors, "it would appear impossible to reconcile their conduct with honesty and good faith." The principle of "applied common honesty" supplies the underlying consideration which reconciles all the various theories that courts have advanced in support of the rule that director-creditors are as a general proposition to be differentiated from strangers when it comes to paying the debts of an insolvent and failing corporation.

Only one other question remains to be answered. The complainant contends on its brief that it is entitled to have all of the thirteen thousand dollars received by the Realty Corporation paid over to it. This is upon the theory, apparently, that the thirteen thousand dollars is an equitable asset belonging to the Theatre Company which the complainant is entitled to reach by a creditor's bill. The

theory is not acceptable. What right of any sort the Theatre Company has in the sum, it is difficult to see. The complainant in advancing the contention of its brief is departing from the theory of its bill. The bill prays that the relative proportionate rights of the complainant and the Realty Corporation in said sum of thirteen thousand dollars be ascertained, and that the Realty Corporation be decreed to hold the complainant's equitable share thereof as trustee for the complainant and to be liable to the complainant therefor. I am of the opinion that the theory of the bill is correct. The complainant has no right while seeking equity for itself to work an inequity to others. If the thirteen thousand dollars had remained in the treasury of the Theatre Company and liquidation had followed, the Realty Company whose claim is not questioned would have received its pro rata share thereof. Because the money is now in its hands is no reason for denying to it its same pro rata share.

The bill also prays that Mitchell L. Erlanger individually be decreed to pay the complainant the sum found to be due it. The prayer should be denied. Erlanger, though a party, has not been served with a subpœna, nor has he appeared. As no relief can be afforded against him, it is not necessary for me to consider the appropriateness of the relief against him asked for in the prayer.

Decree for the complainant in accordance with the foregoing.