ROBERT P. HATFIELD *v.* F. O. LAMB, *Receiver, et al.*

(No. 8272)

Submitted February 11, 1936. Decided March 24, 1936.

276

*Marcum & Gibson,* for appellants.
*Scott, Graham & Wiswell,* for appellee.

HATCHER, PRESIDENT:

The director of an insolvent bank seeks priority for a claim against the bank by virtue of a transaction between him and the bank's president, shortly before the bank closed. The circuit court sustained the director, and the receiver of the bank appealed.

The facts are not in dispute. The plaintiff, Robert P. Hatfield, was elected a director of Huntington Banking & Trust Company in January, 1932, and remained a director continuously until the bank was officially closed on April 7, 1933. Its insolvency at the latter date is conceded. At the January, 1932 meeting of the board of directors and at a number of subsequent meetings in that year, the bank was authorized to borrow various large sums of money running into hundreds of thousands of dollars. On January 6, 1933, the legal reserve of the bank fell below the required amount and remained in that condition until March 6th, when all banks within the state were closed by a federal order. On March 8th, a resolution was adopted by the directors relating to the use of script by the bank. On March 14th, the bank borrowed $75,000.00 which brought its reserve up to the requisite amount. On March 15th, the bank was reopened under conditional permission from the state commissioner of banking. The condition was that the stockholders, or others for them, should pay into the bank a minimum of $50,000.00 (in pursuance of a prior consolidation agreement). The commissioner also added

this instruction: "If upon reopening of said bank it is the belief of the directors that unusual withdrawals are being made, a restrictions of 5% shall be placed upon said withdrawals." The $50,000.00 was not paid. On March 17, the advisability of selling additional stock was discussed at a meeting of the directors. On March 24th, the legal reserve again dropped below the required amount, and continued below it until April 7, 1933, when the bank was taken in charge by the defendant Lamb, representing the state banking department.

The plaintiff did business under the trade name of Hatfield Construction Company, and, in that name, had on deposit in the bank on March 20, 1933, $41,553.75. The transaction in question was arranged with the plaintiff by E. K. Mahan, president of the bank, and is stated in the following letter of March 21, 1933, from Mahan to the Construction Company: "We are charging your account the sum of $10,403.44, being the purchase price (including interest) of one $10,000 Fourth Liberty Loan 4¼% Gold Bond 1933/38. This bond is numbered D00119194 and has attached, coupon due April 15, 1933 in the amount of $212.50, and all subsequent coupons.

"We have forwarded the bond to the Treasury Department at Washington for the purpose of securing additional postal savings deposits to be made in this bank, and this letter will serve as the bank's receipt for your bond. It is understood that a similar bond or the purchase price of this bond will be returned to you upon your demand." Upon the deposit of the bond with the Board of Trustees of the Postal Savings System, $10,000.00 was loaned the bank. The plaintiff referred to the bond transaction as *a loan* to the bank. Mahan was not a witness. Defendant Lamb testified without objection that Mahan said he "borrowed" the bond from plaintiff. No minute of the arrangement was made on the books of the bank, and Hatfield never mentioned it to the directors. The minutes of the board conferred no general authority on the president to borrow money or other thing of value for the bank. On March 22, the plaintiff secured from

the bank three demand certificates of $10,000.00 each, thus withdrawing $30,000.00 more from his checking account. The certificates were never cashed. (Plaintiff testified that he thought he could *get the money* on the certificates whenever he needed it.) On March 22, he also deposited $7,271.28 to his checking account, but by April 7th, it was reduced to $790.07. Several members of the plaintiff's family maintained substantial checking accounts in the bank until it closed. Upon the bank's failure to repay the loan to the Postal Savings System, the bond was sold by the Trustees and brought $280.45 in excess of the loan. This excess was returned to the bank, and judgment therefor in favor of the plaintiff was confessed herein by the receiver.

The plaintiff testified that he made the arrangement as to the bond entirely upon the suggestion of Mahan; that he had no thought of securing any advantage over other depositors at that time or in any subsequent transaction with the bank; and that he did not know the bank was in a failing condition prior to April 7, 1933.

Plaintiff contends that the arrangement as to the bond was one of bailment; that the arrangement benefited the bank and evidences his loyalty; that the loan secured on the bond from the Postal Savings System created a debt due the United States; and that he is subrogated to the preferential right of the United States to priority in payment from the bank's assets. The contentions are not altogether consistent with the evidence. However, discourse thereon is unnecessary, by reason of the following view we take of this cause: The constant borrowing by the bank in 1932, its depleted legal reserve in 1933, its order from the banking commissioner on March 15th to restrict withdrawals in case they became unusual, its failure to have met the requirement of the banking commissioner that $50,000.00 be paid into the bank, its resort to the use of script and its consideration of selling more bank stock, constituted unmistakable signs of a failing condition. The plaintiff's duty as a director required him to keep informed of the bank's condition.

Since his ignorance thereof would show a neglect of duty, the law will not countenance his failure to grasp the situation. *Wolfe* v. *Bank,* 54 W. Va. 689, 693-4, 47 S. E. 243; *Ream's Drug Store* v. *Bank,* 115 W. Va. 66, 73, 174 S. E. 788. When a bank is in failing condition, the law treats the directors as trustees of the corporate assets for the benefit of the creditors. Regardless of a director's intention, the law will not ordinarily sanction any arrangement then, whereby his deposit is secured preferential payment from such assets. *Lamb* v. *Pannell's Admr.,* 28 W. Va. 663; *Benedum* v. *Bank,* 72 W. Va. 124, 78 S. E. 656; *Arnold* v. *Knapp,* 75 W. Va. 804, 811, 84 S. E. 895; 65 C. J., subject Trusts, sec. 520.

Except as to the judgment for $280.45 confessed in favor of plaintiff, the decree complained of is reversed, but without prejudice.

*Reversed in part and remanded.*