## DAVIS v. WOOLF.

### No. 5328.

Circuit Court of Appeals, Fourth Circuit.

Feb. 9, 1945.

H. G. Shores, of Keyser, W. Va., for appellant.

Arthur Arnold, of Piedmont, W. Va., and R. A. Welch, of Keyser, W. Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The trustee in bankruptcy of Snider Brothers Company, a corporation, objected to the claim of William B. Woolf to a lien upon the mill and equipment of the corporation which it had conveyed to him by deed of trust on October 15, 1942, to secure the payment of its demand note for $15,000 given to him for monies advanced at or about the time of the execution of the deed. The deed was recorded on October 20, 1942, and the money was paid to the corporation in three installments of $5,000 each on October 17, November 2 and November 27, 1942, respectively. The referee sustained the objections of the trustee on the ground that the deed was invalid because neither the stockholders nor

the directors had properly authorized its execution; but the District Judge reversed this holding on the authority of certain West Virginia decisions which hold that when a corporation receives and uses money advanced to it as a loan, it is estopped to deny the validity of any instrument given to secure repayment. See Commonwealth Trust Co. v. Reconstruction Finance Corp., 3 Cir., 120 F.2d 254; Hartley v. Ault Woodenware Co., 82 W. Va., 780, 97 S.E. 137; Briers v. Alderson, 101 W.Va. 662, 666, 133 S.E. 373.

We have no doubt of the correctness of this holding; but the judgment is also attacked on grounds not discussed in the opinion of the trial court. It is now said that when the loan was made and the deed of trust was executed, the corporation was insolvent and Woolf was a director of the corporation and had agreed to indemnify a surety on a bond of completion given by the corporation with respect to a building which it had agreed to erect but was unable to complete because of its insolvent condition; and it is suggested that the loan was made to enable the corporation to finish the building and free Woolf from liability under his contract of indemnity. On these allegations it is contended that the conveyance constituted an illegal preference under the West Virginia law and should be declared invalid and set aside in the interest of creditors.

We are confronted at the outset of the inquiry by the fragmentary and unsatisfactory condition of the record, from which it is impossible to determine with certainty whether at the time the corporation was insolvent or Woolf was a director, or whether the purpose and effect of the transaction between Woolf and the corporation was to secure the discharge of his liability to the surety on the bond of completion. No finding on any of these points was made in the court below and the agreed statement of facts on which the case is submitted to us is of such a character that we should be unable to decide them ourselves even if we deemed it proper to attempt to do so.

The salient facts as far as they can be summarized are as follows: Snider Brothers Company, a corporation, was engaged in a general contracting business. It was a close corporation with 350 shares of stock outstanding. Hetzell Pownall, the vice-president and general manager in charge of the financial affairs, owned, together with his wife, 199 shares; Frank Snider, president and superintendent of construction, 75 shares; Arthur Snider, mill foreman, 37½ shares; Joseph Snider, superintendent of construction, 37½ shares, and William B. Woolf 1. The last election of directors took place in 1941 when Woolf was elected a director.

When the deed of trust was executed on October 15, 1942, the corporation was in the midst of erecting certain buildings which it was under contract to complete. The petition in bankruptcy was filed on April 8, 1943 and the adjudication took place on April 26, 1943, more than four months after the deed of trust was executed and recorded and the money was advanced. The money was used in the completion of a building at Glenville State Normal School which the corporation had contracted to build.

So much is not disputed. The question of solvency, however, is left in doubt. Frank Snider testified that he and his two brothers knew that the company was insolvent in 1942; that he did not know whether Woolf knew that the company was insolvent in September, 1942 but that he did know it in October, 1942. On cross examination he stated that in October, 1942 the corporation paid off all of its indebtedness except current accounts and the $15,000 note due to Woolf, but that he knew nothing of the bookkeeping of the corporation. There was also testimony that on October 15, 1942 the corporation had to its credit in bank $8,223.77. Woolf testified that he did not know and had no reason to believe that the company was insolvent when he loaned the money and the secretary and attorney of the company testified that it was solvent when the money was loaned.

Also in evidence were certain letters written by the National Surety Company to Woolf, Pownall and others in October, 1942 indicating that the Surety Company was surety on a bond given by the corporation for the performance of a contract with the State of West Virginia for the completion of the Science Building at Glenville, and that the company and Woolf had given the surety an indemnity agreement to protect it from loss. The letters also indicated that the company had received an overpayment of nearly $30,000 on the building from the State of West Virginia; that the cost of completion of the building would exceed the balance of

the contract price by approximately $18,-000, and that the Surety Company had placed the matter in the hands of its attorneys. The letter stated that the Surety Company had refused a request of the corporation to advance it money to enable it to complete its contract and that the banks were also unwilling to do so and suggested that an application for a loan be made by the corporation to the Reconstruction Finance Corporation and that Woolf, by reason of his connection with the corporation, might be in a position to assist the corporation in securing the loan.

The agreed statement of facts also stated that Woolf had testified that he never qualified as a director under the election of 1941 and never attended a directors' meeting and was not a director of the corporation after the year 1940.

■ There was no agreement on these important points in the agreed statement of facts, but merely a brief outline of the testimony on either side, and hence it is obvious that this court is in no position to make findings of fact which must depend upon the credibility of the witnesses and their knowledge of the facts to which they have testified. But enough appears to indicate that when the deed was executed, the corporation may have been insolvent and unable to complete its building contracts and Woolf may have been a director of the company, sufficiently acquainted with its affairs and its financial status to induce him to safeguard himself against possible liability to the Surety Company under the indemnity agreement. Insolvency might have existed even though all the current indebtedness had been paid off if the corporation's obligations under its building contracts were sufficiently certain to be provable claims. See Williams v. United States F. & G. Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713; Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028; Glenn, Liquidation, §§ 19 and 458; 8 C.J.S., Bankruptcy, §§ 397, 404. In such case the fact that Woolf had made no payment under his indemnity agreement would be immaterial for even though his claim had not matured, the steps taken to secure him from loss might nevertheless be preferential. Glenn, Fraudulent Conveyances and Preferences, § 459. The case must therefore be remanded to the District Court for further proceedings because the validity of the deed of trust cannot be determined until these uncertainties are cleared up.

■ When this has been done, consideration must be given to the rule, for which there is ample authority, that if property is transferred to a surety after he has become bound upon his guaranty, in order to indemnify him from loss, and the principal is insolvent at the time of the transfer, it is a preferential transfer and may be recovered by the trustee in bankruptcy of the principal under § 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, if the other conditions therein prescribed for a recoverable preference concur. In other words, a surety is a creditor under the Bankruptcy Act. Glenn, Fraudulent Conveyances and Preferences, § 459; Cohen v. Goldman, 1 Cir., 250 F. 599, 600; Kobusch v. Hand, 8 Cir., 156 F. 660, 18 L.R.A.,N.S., 660; Walker v. Wilkinson, 5 Cir., 3 F.2d 867; Hershon v. Abelson, 2 Cir., 69 F.2d 102. To the same effect is the decision in Arnold v. Knapp, 75 W.Va. 804, 815, 84 S.E. 895, where it is said that by the weight of authority the payment of a note by a corporation by the procurement and for the relief of a director of the corporation who endorsed the note constitutes an unlawful preference to him recoverable by the trustee in bankruptcy.

■ It is equally true that if a surety pays or provides funds for the payment of a debt and the principal transfers property to the surety to indemnify or reimburse him, this is a preference of the surety in the event of the principal's bankruptcy and the existence of the other conditions which are declared by the Bankruptcy Act to constitute a preference. United Surety Co. v. Iowa Mfg. Co., 8 Cir., 179 F. 55, certiorari denied 217 U.S. 606, 30 S.Ct. 696, 54 L.Ed. 900; Crandall v. Coats, D.C.N.D. Iowa, 133 F. 965; McAtee v. Shade, 8 Cir., 185 F. 442; 88 A.L.R. 83 and cases cited. In such case the estate of the bankrupt is not enhanced in the least by the money advanced by the surety at the time of the transfer because the surety receives property equal to the value of the money advanced and the only purpose and effect of the transaction is to substitute the surety as a principal creditor for the amount of the debt. In effect the situation is the same as if the principal debtor pays the debt out of its own funds at a time when it is insolvent thereby relieving the sure-

ty from any possibility of loss under its contract.

**[redacted]** Notwithstanding these established rules, it is suggested that the trustee cannot recover in this case because the transfer to Woolf was made more than four months before the petition in bankruptcy was filed. The four month limitation appears not only in § 60, sub. a, 11 U.S.C.A. § 96, sub. a., and § 67, sub. d, 11 U.S.C.A. § 107, sub. d, of the Bankruptcy Act but also in the West Virginia statute of preferences codified in § 3989 of the West Virginia Code of 1943 to which reference is hereinafter made. But if it be proved that the corporation was insolvent and Woolf was a director when the deed of trust was made, then an element of illegality or fraud enters the case which is not an essential ingredient of the preferences to which § 60, sub. a of the Bankruptcy Act and § 3989 of the West Virginia Code are directed. When directors or officers secure preferences for debts owed them by an insolvent company or protect themselves from liability on guaranties which they have executed in the company's behalf, the preferences are unlawful and must be surrendered in a suit brought by the representatives of the creditors. Glenn, Fraudulent Conveyances and Preferences, § 386. In West Virginia it is well settled that a director cannot prefer himself after the insolvency of his company. Arnold v. Knapp, 75 W.Va. 804, 84 S.E. 895; Elliott v. Farmers' Bank of Philippi, 61 W.Va. 641. 656, 57 S.E. 242; Hatfield v. Lamb, 117 W.Va. 275, 279, 185 S.E. 229. In Arnold v. Knapp, supra, it was said (page 811 of 75 W.Va., page 899 of 84 S. E.):

"* * * The law by the great weight of authority seems to be settled that when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they then can not by transfer of its property or payment of cash, prefer themselves or other creditors, and that this is so, independently of any of the provisions of the national bankruptcy law."

The same court in Ohio Finance Co. v. Mannington Window Glass Co., 86 W.Va. 322, 337, 338, 103 S.E. 333, 340, repeated with approval the statement of the rule as it was laid down in Sweeny v. Grape Sugar Refining Co., 30 W.Va. 443, 4 S.E. 431, 8 Am.St.Rep. 88, as follows:

"It seems to be very well established that the officers and directors of a Corporation whose assets are insufficient for the payment of all of its debts cannot apply those assets to the payment of debts for which they are liable to the exclusion of creditors who have no security for their debts. This is by reason of the confidential relation which officers and directors bear toward the corporate property. They cannot use their positions for their own advantage. They are in a sense trustees holding the corporate property for the benefit of all creditors alike, and any attempt by them to divert this property so as to deprive a creditor of his equitable part thereof, and relieve themselves of liability, *will be held to be fraudulent.* And this is so independent of any statute forbidding an insolvent debtor to prefer creditors." (Italics inserted.)

One of the best discussions of the rule is contained in the opinion of the Chancellor in Pennsylvania Co. for Insurance on Lives and Granting of Annuities v. South Broad St. Theatre Co., 20 Del. Ch. 220, 174 A. 112, 116:

"The principle upon which the rule rests that forbids a director-creditor to enjoy a preference over others in the circumstances of the company's insolvency, is variously stated. By most of the authorities it is posited on the so-called 'trust fund theory' by which capital assets are said to constitute a trust fund for creditors. By others it is said to be based on the inequity of allowing a director to take advantage of the superior means of information which he enjoys over other creditors, conjoined as it is with a power or influence which enables the possessor to reap a personal advantage over others whose claims are equally meritorious. Let the theory under the rule be phrased as it may, analysis in the end will resolve all the reasons underlying the rule into the one simple proposition that it is, as stated by Judge Kenyon in Stuart v. Larson, 8 Cir., 298 F. 223, 227 [38 A.L.R. 79], but 'merely applied common honesty' that a director of an insolvent corporation should not be allowed as it sinks to take advantage of his position by rushing ahead to a place in the life boat, if I may use the figure, ahead of his fellow passengers. The trust fund

doctrine, if it be accepted as it is by perhaps a majority of the courts as the foundation of the rule, is supposed by some to possess certain logical consequences which lead to a result incompatible with the rule. Yet that doctrine if traced to its source appears to be nothing more than a particular expression of the fundamental principle which good morals exact, that men should act in honesty and fairness."[1]

■ If it is found upon further examination of the facts of the pending case that the transaction with Woolf was obnoxious to the West Virginia law in respect to preferences to director-creditors, the trustee would not be bound by the four month limitation contained in § 60, sub. a, 11 U.S.C.A. § 96, sub. a, and § 67, sub. d, 11 U.S.C.A. § 107, sub. d, of the Bankruptcy Act. He would be authorized to proceed under § 70, sub. e, 11 U.S.C.A. § 110, sub. e, of the Bankruptcy Act which empowers the trustee to recover any property of the debtor affected by a transfer which under any federal or state law applicable thereto is fraudulent as against, or voidable for any other reason, by any creditor of the debtor having a provable claim against the bankrupt estate; and the case would turn, as the District Judge held, on the West Virginia law. See Commonwealth Trust Co. v. Reconstruction F. Co., 3 Cir., 120 F.2d 254.

■ The appellee contends that the state law applicable to this case is § 3989, of the West Virginia Code of 1943. That section provides that every transfer made by an insolvent debtor to prefer a creditor or to secure a surety for a debt shall be void and shall be taken to be for the benefit of all creditors of the debtor, provided that any transfer shall be valid if admitted to record within eight months after it is made unless suit is brought within four months after the transfer is admitted to record. The section also provides that the creditors' suit shall be deemed to be brought in behalf of all other creditors of the debtor who shall come into the suit and unite with the plaintiff before final decree and agree to contribute to the expenses of suit, and that the creditors who so unite and agree to contribute to the expenses of suit, together with the creditor to whom the transfer has been made, shall be preferred to any creditor who fails so to unite and contribute to the expenses of the suit.

We do not think that the four month limitation in this statute should be accepted as a conclusive answer to the trustee's suit herein, for other phases of the West Virginia law must be considered. It is true that in Arnold v. Knapp, supra, in which a preferential payment for the benefit of a corporate officer, was under examination, the court not only stated the general rule as to the illegality of preferential transfers to directors, but referred to § 3830, Code 1913 (§ 3989 Code of 1943), as indicative of the policy of the law of the state to void all preferences of creditors by insolvent individuals or corporations. Again in Clarksburg Casket Co. v. Valley Undertaking Co., 81 W.Va. 212, 94 S.E. 549, 3 A.L.R. 660, a preferential transfer by an insolvent concern to its president was upheld against general creditors because no suit to set it aside was brought until four months after the deed had been recorded, as provided in the statute; and this decision was made in spite of the holding that the deed was not legally recordable because of defective acknowledgment. In the latter case, however, no reference was made to the general rule recognized in West Virginia that any attempt by a director to divert property so as to deprive creditors of their equitable part therein shall be held fraudulent; and it was specifically found that the transfer was given for a valid consideration and was free from fraud.

We think it is clear that § 3989 of the West Virginia Code was directed at preferences which would otherwise be lawful and binding, and does not cover preferential transfers to directors or to others in confidential relationship with the debtor which have been uniformly held to be unlawful in West Virginia and which in certain West Virginia decisions, have been described as fraudulent. In a number of cases transfers to directors have been invalidated by the courts of West Virginia under the general principle that directors are trustees for creditors and without any reference to the preference statute whatsoever. See, Elliott v. Farmers' Bank of Philippi, supra; Hatfield v. Lamb, supra; Ohio Finance Co. v. Mannington Window Glass Co., supra; Sweeny v. Grape Sugar

---

[1] For a thorough examination of the application and meaning of the trust-fund doctrine see Glenn, Fraudulent Conveyances and Preferences, §§ 596–598, 602–604.

Refining Co., supra. The statute was described by the decision In re Porterfield, D.C.N.D.W.Va., 138 F. 192, 198 as a statute which in fact allows a class preference since it does not in fact set aside the original preference given ·by the transfer but gives the transferee and those creditors who join to set it aside a preference over other creditors who do not join in the suit. It is especially significant that in Bank v. Prager & Son, 50 W.Va. 660, 680, 681, 41 S.E. 363, it was held that the preference statute did not change the policy or the laws of West Virginia relating to insolvent debtors and was not intended to and did not affect the West Virginia statutes relating to fraudulent conveyances but was intended only to prevent other preferences to creditors. The plain inference from these decisions is that the statute was aimed only at preferential payments otherwise lawful and valid.[2]

We gave effect to this viewpoint in the case of In re Lamie Chemical Co., 4 Cir., 296 F. 24, 30, 31, where certain conveyances executed by an insolvent West Virginia corporation to its officers and directors to secure them as endorsers of its obligations were held invalid. We quoted the passage from Arnold v. Knapp, supra, with reference to transfers to directors above set out, and held that since the officers of the company were the beneficiaries sought to be preferred, the fraudulent character of the transfers became manifest as a matter of law if not of fact, and that they necessarily tended to hinder, delay and defraud the creditors in violation of § 1, Ch. 74 of Barnes West Virginia Code, now § 3985 of the Code of 1943, which prohibits such conveyances. We also held that the trustee was empowered by § 70, sub. e of the Bankruptcy Act to recover property transferred in violation of the state statute, and that the right of action under § 70, sub. e, was not governed by the four months limitation prescribed in §§ 60, sub. b and 67, sub. e,[3] of the Bankruptcy Act.

We conclude that the trustee's objections in the pending case of Woolf's claim to the property covered by the deed of trust was not barred by the limitations of time imposed upon a creditors' suit by § 3989 of the West Virginia Code. Irrespective of that statute, the West Virginia decisions treat payments of money or transfers of property by an insolvent corporation to director-creditors as illegal or fraudulent because they violate the principles of honesty and fair dealing. The decisions depend upon general principles of law and do not refer to the prohibition against fraudulent transfers contained in § 3985 of the Code. But, it is immaterial whether the transaction with Woolf be regarded as a technical violation of the statute against fraudulent transfers or merely as an infraction of the general rules of law, for in either case the trustee's objection to the claim was taken in due time and was not barred by the state statutes of limitation.

It is not intended by this opinion to suggest that conditions existed at the time of the transfer which would justify the setting aside of the conveyance to Woolf; but in order to expedite the bankruptcy proceeding it has seemed advisable to set out the principles which should govern the decision of the District Court in passing on the questions of fact and law involved in the trustee's objection to the claim. The case will therefore be remanded to the District Court for further proceedings in accordance with this opinion.

Reversed and remanded.

---

[2] The change in the character of the preference from the one it presented in older days is pointed out in Glenn, Fraudulent Conveyances and Preferences, § 562, as follows: "Then the preference was 'fraudulent', but now, as the Supreme Court has told us, it 'is not necessarily fraudulent. Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008. Indeed as the Court said later, the difference between fraudulent conveyance and preference is that 'one is inherently and always vicious; the other is innocent and valid, except when made in violation of the express provisions of a statute. One is malum per se and the other malum prohibitum, —and then only to the extent that it is forbidden. A fraudulent conveyance is void regardless of its date; a preference is valid unless made within the prohibited period.' Van Iderstine v. Nat. Discount Co., 227 U.S. 575, 33 S.Ct. 343, 57 L.Ed. 652."

[3] § 70, sub. e, now Act 1938, § 70 sub. e, 11 U.S.C.A. § 110, sub. e; § 60, sub. b, now Act 1938, § 60, sub. a, 11 U.S.C.A. § 96, sub. a; § 67, sub. e, now Act 1938, § 67, sub. d, 11 U.S.C.A. § 107, sub. d.