## DAVIS v. WOOLF.

### No. 5394.

Circuit Court of Appeals, Fourth Circuit.

July 16, 1945.

H. G. Shores, of Keyser, W. Va., for .appellant.

R. A. Welch, of Keyser, W. Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The question is again before us as to whether the claim of William B. Woolf against the bankrupt estate for $15,000 lent by him to the corporation on October 15, 1942, more than five months before the petition in bankruptcy was filed, is secured by a valid deed of trust on the mill and equipment of the corporation, or is provable only as an ordinary debt. Upon the first appeal, 147 F.2d 629, we followed the rule that if property is transferred to a surety after he has become bound upon his guaranty in order to indemnify him from loss, it is a preferential transfer and may be set aside if the other conditions for a recoverable preference concur; and that if the principal debtor is a corporation and the surety is a director thereof, such a transfer is invalid, if made while the corporation is insolvent, even if it has taken place more than four months before the petition in bankruptcy is filed. We held that the decision in the case depended upon whether three factors concurred at the time of the execution of the deed, that is: (1) Was the corporation insolvent? (2) Was Woolf a director of the corporation? (3) Was Woolf bound by an agreement to indemnify the surety on a bond of completion with respect to a building which the corporation was under contract to erect? We decided that if these questions could be answered in the affirmative, the deed of trust was ineffective to create a valid lien, and since they could not be answered upon the record before us, the case was remanded for further proceedings.

When these were had, the District Judge held: (1) That the corporation was solvent during the entire month of October, 1942; (2) that Woolf was a director of the company at that time only in a technical sense; and (3) that there was no indemnifying agreement between Woolf and the Surety Company with respect to the only building which the corporation then had under construction. We are convinced from a careful examination of the record that the findings on the first two points must be reversed and that certain evidence upon the third point offered by the trustee and rejected by the court should have been received, since, if unexplained, it tended to show the existence of the indemnifying agreement. We proceed to give the reasons for our conclusions.

The evidence of the officials of the company on the question of insolvency was conflicting. On the one hand, Frank Snider, president of the company, who with his two brothers directed the building operations in which the corporation was engaged, testified that the company was insolvent in September, 1942, when the Bonding Company sent an investigator to look into its affairs, and that this condition was known

to his brothers and to Woolf. He said he was not familiar with the company's accounts.

On the other hand Woolf, who was an experienced business man, and his brother-in-law, Hetzel Pownall, who was vice-president and general office manager of the company, testified that at the time the deed was executed they made an examination of the books, balance sheets and equipment of the corporation, and considered it to be solvent. The secretary-treasurer and book-keeper of the company testified that the company was apparently solvent at the time.

All of this testimony was quite general in character and was not supported by specific figures or valuations except insofar as support was furnished by two balance sheets of September 30, 1942 and October 31, 1942, respectively, which were found in the papers of the company by the trustee and received in evidence as a correct statement of the company's condition. They constituted the only detailed testimony on the question of solvency, and since they indicated that the excess of assets over liabilities was $20,403.95 on September 30 and $24,270.64 on October 31, they were accepted as conclusive proof of solvency on the crucial date.

■ This finding cannot stand, because it ignores other testimony which demonstrates that the balance sheets gave only a partial and incorrect picture of the actual situation. They failed to take into account a contract obligation of the company to complete a school house; and the evidence shows that this obligation, when reduced to definite figures, was greater in amount than the apparent excess of assets over liabilities shown by the balance sheets. The following recital of facts, which has bearing also on the other issues in the case, will make this statement clear:

The corporation was under contract with the State of West Virginia to erect a science building at the Glenville Normal School and ran short of the necessary funds to complete the job in September, 1942. The National Surety Company was surety on the bond of completion. On October 6, 1942, it wrote Woolf that it had received a statement from Pownall that the company needed money to complete the building and could not get it from the banks, and that consequently the Surety Company had sent its representative to investigate the situation, who found that the corporation had received up to September 19, 1942, $29,762.74 in excess of the amount that was due under the contract, and that only $11,700 of the contract funds remained unpaid, while approximately $30,000 worth of work remained to be done. These figures, when taken in connection with those shown on the balance sheets, indicate insolvency, since the balance sheets listed the retained percentage on the assets side, but failed to list among the liabilities the unfulfilled obligations of the corporation to complete its state contract. Had this been done, the balance sheet of September 30, 1942, would have shown a deficit of $9,596.05 and that of October 31, 1942, a deficit of $5,729.36, assuming that $30,000 of work remained to be done.

The letter of the Surety Company also notified Woolf that he was party to an indemnity agreement of December 24, 1938, wherein he and the corporation agreed to protect the surety from all loss which it might sustain as the result of the execution of any bonds applied for by the contractor. A subsequent letter of October 13, 1942, from the Surety Company to Woolf contained the statement that a copy of the indemnity agreement was enclosed. Woolf testified that he received these letters.

■ It was under these circumstances that the loan of $15,000 was made by Woolf and the deed of trust was given to him on October 15, 1942. Thereafter he kept close watch upon the company's operations, and attended all the directors' meetings as the proxy of Pownall, who had entered the military service. He not only advanced the sum of $15,000 but also advanced additional sums from time to time amounting in the aggregate to $22,000, all of which monies, according to the undisputed testimony, were used in the completion of the building. In other words, the actual experience of the company demonstrated that in October, 1942, the burden resting upon it to complete the Glenville building, expressed in terms of dollars, amounted to $37,000, a sum $7,000 in excess of the surety company's estimate.[1] The deficit of the company was therefore not less than $16,596.05 on Sep-

---

[1] As we indicated in our first opinion, unfulfilled obligations under building contracts may be sufficiently certain to be provable claims in bankruptcy. See authorities there cited.

tember 30 and $12,729.36 on October 31, 1942, even if the other figures contained in the balance sheets are accepted as correct. Other undisputed evidence indicates that some of these figures gave too favorable a picture of the company's financial condition. For example, it is conceded that the retained percentage on the contract, listed as an asset on the balance sheet, was mistakenly placed at a figure $2,000 in excess of its real value. When we also consider that the petition in bankruptcy was filed on April 8, 1943 and that the corporation suffered an adjudication by default thereby admitting insolvency as early as February 13, 1943, we have strong reason to find that a similar insolvent condition existed at the time of the transfer to Woolf on October 15, 1942, because the only change in the circumstances of the company between these dates consisted of the substantial financial aid furnished by Woolf.

■ The evidence bearing upon Woolf's relationship with the company compels the conclusion that he was a director in fact as well as in name at the time that the deed of trust of October 15, 1942, was executed. He had been associated as a special partner with the company in an earlier building enterprise in Mineral County, which was erected in 1939. He was elected a director on January 18, 1940, and again on January 18, 1941. No election of directors took place in January, 1942, so that he and his colleagues continued in office under the West Virginia statute. W.Va. Code, Michie 1943, §§ 3028, 3087. The meetings of directors were infrequent and the minutes do not disclose that he attended directors' meetings during this period but he saw his brother-in-law Pownall daily and discussed with him the affairs of the company. He was familiar with all of the circumstances which led up to the execution of the deed of trust and testified that he made a complete examination of the affairs of the company before entering into that transaction. He attended all the directors' meetings thereafter as the proxy of Pownall and joined in authorizing the subsequent transactions wherein he made additional loans and received additional security. In our view his relationship as director of the company is established beyond doubt.

With these two points established, it is obvious that the case turns on the inquiry whether Woolf was party to an indemnity agreement to save the Surety Company from loss on its bond of completion guaranteeing the performance by the bankrupt of its Glenville contract. That Woolf was party to an indemnity agreement to save the Surety Company harmless is not denied. During the proceedings in the District Court he filed an affidavit in which he admitted that he was party to a general indemnity agreement of December 24, 1938, signed by the bankrupt corporation and himself, of which agreement a photostatic copy was presented to the court. His contention was that the agreement related only to the performance of the contract for the erection of the buildings in Mineral County, W. Va., which were completed in 1939 and did not cover the subsequent contract of the bankrupt to erect the building at the Glenville Normal School. The District Judge indicated that he accepted this view of the situation but refused to admit the photostatic copy of the agreement in evidence, on the ground that it was not the best evidence.

■ We think that this ruling was in error, since the objection was directed primarily to the relevancy of the agreement and only incidentally to the fact that a photostatic copy rather than the original of the agreement was offered in evidence. Indeed Woolf verified his signature on the photostatic copy. It was under these circumstances that the finding was made in the District Court that Woolf did not enter into an agreement with the Surety Company to indemnify it against any loss it might sustain as surety on the contractor's bond given in connection with the erection of the Glenville School. The finding was made, although, as the District Judge pointed out in his opinion, the questions of directorship and execution of the indemnity agreement by Woolf became immaterial in view of the finding that the company was solvent on October 15, 1942. The additional questions were nevertheless given consideration. With respect to the indemnity agreement it was pointed out that no attempt had been made to produce the original thereof although it had been suggested to counsel by the court that if an original agreement existed, it should be produced. We think that the attorney for the trustee should have given heed to this admonition and should have taken steps to take the testimony of the officials of the surety

company by deposition, if necessary, to establish this important fact.

But we do not think that the case should go off on this point, in view of the admission of Woolf that an indemnity agreement was executed, whose provisions, when examined in the copy, indicate liability on Woolf's part with respect to the Glenville contract. While the agreement is dated December 24, 1938, and doubtless was executed with especial reference to the contract of 1939, its language is sufficiently broad to cover bonds of completion thereafter executed. Under the agreement the corporation and Woolf agreed that they would indemnify the surety against any liability which the surety might sustain or incur in consequence of having executed such bonds as had been and such as might thereafter be applied for by any of the indemnitors. It is conceded that such a bond was applied for by the bankrupt and executed by the surety company with reference to the Glenville School. It may be, as was suggested in argument, that the application to the Surety Company and other papers executed by the bankrupt corporation and Woolf will demonstrate that the indemnity agreement of December 19, 1938, has no bearing on the later transaction; but this conclusion cannot be reached upon the evidence now before us and the case will be remanded for further hearing limited to the point now under discussion, with leave to both sides to present such evidence as they may have bearing upon the point.

We reach this conclusion not only by reason of the express language of the contract of indemnity of December, 1938, but also because other evidence in the case has some tendency to show that Woolf would have been liable thereunder had the Glenville contract not been completed. It is a relevant circumstance that Woolf made the loan of $15,000 on October 15, 1942, and the subsequent loans of $22,000 after he had been warned by the Surety Company that they held his indemnity agreement, and after they had sent to him the photostatic copy. Moreover, the president of the bankrupt corporation testified that in a conversation Woolf said that he would not have advanced so large a sum of money to assist the corporation in the erection of the Glenville building but would have allowed the bonding company to sue him, if he had known that instead of an advance of

$15,000 it would require nearly $40,000 to do the work.

The judgment of the District Court will be reversed and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.