JOHANN AMUSSEN,

*vs.*

THE QUAKER CITY CORPORATION, a dissolved corporation of the State of Delaware.

*New Castle, July 6, 1931.*

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for complainant.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for defendant.

THE CHANCELLOR: The important question in this case is presented by the general ground of demurrer assigned *ore tenus.* That question is—may the directors of an insolvent corporation which has either ceased to do business or contemplates a cessation of business, prefer certain of its unsecured creditors over others, the favored creditors not including among their number any of the officers, directors or stockholders?

The authorities which deal with the general subject which this question touches are far from harmonious in their views. The conflict among them arises out of the difference of attitude which the courts entertain towards the so-called trust fund doctrine. That all courts recognize a trust fund doctrine of some sort appears to be clear. The confusion among them is due to the lack of agreement as to just what are the limits to which the conception will be applied, that corporate assets in case of insolvency are a trust fund for the benefit of creditors. If an insolvent corporation should undertake to turn its assets over to stockholders, leaving creditors unpaid, I think no dissent can be found to the proposition that the law would condemn the effort. As against stockholders, it is universally conceded that the assets of an insolvent corporation will be regarded in such a case as "a trust fund for the benefit of creditors." The word "trust" in this phrase has given rise to some confusion due to the fact that some courts have carried the logic of its connotations to a degree quite beyond the length to which its aptness as descriptive of the relations between the corporation and its creditors would warrant. For instance it has resulted in a holding in some jurisdictions that the trust character is impressed upon the corporate funds in case of insolvency not only as against the stockholders for

the benefit of creditors, which as before stated is everywhere conceded, but as well for the benefit of the creditors *inter sese,* so that a creditor who has been preferred may be balked of the enforcement of his preference, or, if he has already accomplished its purpose by executed acts, be made subject to a decree or judgment appropriately adapted to reduce him to a footing of equality with all other creditors in like class. It would seem that the courts which adhere to the trust fund doctrine in its fullest implications should hold that directors of an insolvent corporation are personally responsible as for a breach of trust in case they give preference to one creditor over another. Such would seem to be the result which logic would deduce from the premises. I have not, however, examined the cases with this point in view, because the broad premise from which the result flows does not appear to be supported by the weight of authority. Therefore its ramifications into results is not a subject that I am called upon to consider.

While the trust fund doctrine is supported by the overwhelming weight of authority in cases where the conflict is between creditors on the one hand and stockholders on the other, and also in cases where the corporate assets have been drawn within the administrative power of courts or statutory agencies for liquidation and distribution, yet the weight of authority favors the view that as among creditors, no trust exists which prevents the directors of an insolvent corporation from preferring some over others, notwithstanding the corporation is in failing circumstances and manifestly headed for disaster. To review the cases so holding would require a degree of labor which is not at my disposal. They may be found cited in *Corpus Juris, Vol. 14A, p.* 895, in support of the text reading as follows:

"In harmony with the common law rule that an insolvent debtor may prefer a creditor although the effect is to delay or disappoint his other creditors, the rule supported by the weight of authority is that in the absence of contrary charter or statutory provisions, a corporation when insolvent or in contemplation of insolvency may dispose

of its assets so as to prefer favorite creditors, although the result may be to leave nothing for others who stand on a footing equally meritorious."

In 8 *Thompson on Corporations*, (*3d Ed.*) § 6129, the author states that: "the holdings generally are that unless prevented by the governing statute a corporation, although hopelessly insolvent, has the same power as a natural person to prefer a creditor to the exclusion of others." See also *Ibid.* § 6142.

In this State it is clearly indicated by two cases in the court of last resort that an insolvent individual, so long as he does not resort to the statute governing assignments for the benefit of creditors, is at perfect liberty to choose any from among his creditors whom he will pay in preference to others. *Waters v. Comly*, 3 *Har.* 117; *Stockley v. Horsey*, 4 *Houst.* 603. If the right of an insolvent corporation to prefer creditors is to be measured by the same rule as is applicable to insolvent individuals, it therefore is clear that in this State the right is beyond doubt. The numerous cases cited in support of the text of *Corpus Juris* and *Thompson*, show that the so-called trust fund theory has not been so extended in its application as to except the case of an insolvent corporation from the rule applicable to insolvent debtors generally.

The complainant argues that if an insolvent corporation may prefer one creditor over another, the court adopting that view will be faced with the danger of being driven to hold that as no distinction can logically be made between creditors of the same grade, a director who is also a creditor may be preferred. A holding that leads to that result, argues the solicitor for the complainant, is so repulsive to all sense of justice, that no court should adopt a rule that inevitably leads to it. To this argument, it is sufficient to say that while some courts have been unable to extricate themselves from the logic of the rule and so have gone to the extreme of allowing directors who are creditors to be preferred, yet others, and these represent the decided pre-

ponderance of authority, have found no difficulty in excepting director-creditors from the operation of the general rule. I shall not pause to discuss the considerations which have induced the judicial mind to treat director-creditors differently in this regard from others. When, if ever the question arises, this court will have to answer it according as reason and authority would suggest. It does not arise in this case, for there is no allegation that the creditors who were paid included any of the directors.

It is further pointed out, that if a corporation is dissolved under our statute, its corporate life is continued for three years for the purpose of winding up its business; that during this period its directors and officers continue to function as before; that if as officiating corporate officials they could prefer creditors before dissolution, logically they could do so during the three year liquidating period; and that if that be the situation it would be a most curious not to say absurd one, for, in the same contingency of dissolution, trustees or receivers could be appointed by the Chancellor to wind up the affairs, and if such be appointed, equality among all of the same grade and preference for none, is the rule upon which the liquidation proceeds. It is said that there can be no reason in thus permitting the mere appearance on the scene of judicially appointed trustees or receivers to work a change of principle in the winding up operation. Yet there is nothing novel about the magic of judicial interference by way of receivership as a transforming agency by which assets that before were freed from a trust are turned into a trust fund to be administered on a basis of equality. Abundant authority may be cited to demonstrate the potency of judicial interference in that regard.

It is a mistaken view to consider that if the trust fund doctrine be not accepted to the extreme extent which some courts have applied it and which the complainant advocates in this case, creditors generally of an insolvent corporation will find themselves helpless to protect themselves against

the disposition of directors to prefer a favored few. The fact of insolvency, out of which arises the apprehended danger of discrimination among creditors, supplies in itself a reason for seeking the appointment of a receiver, as does also the fact of formal dissolution under the statute. So that any creditor, who is unwilling to entrust his chances of fair treatment to the officers and directors of the corporation, has recourse open to him to resort to the courts where he may ask that the corporate assets be drawn under judicial administration upon a basis of equality. The creditor is therefore not helpless. While it may be said that to compel creditors to seek protection by receivership proceedings casts upon them the burden of vigilance, the reply is that such is a burden that creditors have always been generally expected to assume. This burden, as against an individual debtor, is one that the law in this State so rigorously imposes that creditors are required to bear it to the extent of competing in a race for judgments and executions. A creditor of an insolvent corporate debtor, however, is given a special indulgence by the law, one that if his debtor were an individual is denied to him, viz.: the right promptly upon insolvency to ask in substance that no race be run by creditors, that a receiver be appointed for all of the debtor's assets and that they be applied for the benefit of all creditors with equal impartiality to the slothful as well as to the swift. Thus the legislative power of the State has made the case of corporate creditors one for special consideration and given them a recourse not available to creditors whose claims are against individuals, for whom no receiver can be appointed on the ground of insolvency. The trust fund theory, if carried to the length contended for by the complainant, would constitute a yet further extension by the courts of exceptional favor in behalf of corporate creditors. The risks of liability on the part of honest directors, which inhere in the contentions of the complainant if they be accepted, are so great and hazardous, that I think the courts should not subject them

to it by so carrying to its extreme length the logic of a catchy phrase that it eventuates in special indulgences to creditors whose debtors happen to be corporations, greater than the indulgences which the phrase was originally designed to express. In order to circumvent the possible favoritism of supposedly unfair directors towards favored creditors, it would not appear justifiable to subject directors of corporations who endeavor to act in good faith to such a liability as is here contended for, especially when, as is the case, the favoritism of the former can be circumvented by a receivership application. If the time were available, it would not be difficult to point out a variety of circumstances which might prevail under which directors, if the complainant's views be accepted, might, however unimpeachable their motives, be subjected to expensive demands against them by creditors who claimed an unfair discrimination in the payment of debts. A creditor, simply because his debtor is a corporation, it appears to me has no just right slothfully to sit quietly in the possession of his claim and expect, in case his debtor becomes insolvent, the courts to protect him through the instrumentality of a judicially created trust.

In *Mackenzie Oil Co. v. Omar Oil & Gas Co.*, 14 *Del. Ch.* 36, 120 *A.* 852, 858, the receivership statute of this State was under discussion and the language was used that creditors of a corporation have, upon insolvency, "the right to regard the corporate assets as being impressed with a new nature, something in the nature of a trust, and, because of this new nature, ask that the Chancellor take charge of them." This language is quoted by the solicitor for the complainant as tending to support his contention that insolvency in itself, without regard to proceedings under the receivership statute, converts the corporate assets into a trust fund for the benefit of all creditors. I shall not pause to point out the connection in which that remark is to be taken. It is sufficient to say that it was not intended to be taken in the sense in which the complainant's solicitor

argues, as is evident from the following excerpt taken from the same opinion: "It is well settled that insolvency on the part of a corporation can have no effect as impressing upon corporate assets a trust which creditors may appeal to equity to take cognizance of and administer for their benefit. *Hollins v. Brierfield Coal & Iron Co.*, 150 *U. S.* 371, 14 *S. Ct.* 127, 37 *L. Ed.* 1113. Accordingly, if the statute in question [receivership statute] had never been enacted, the suggestion that insolvency converts corporate assets into a *quasi* trust for the benefit of creditors would find no countenance."

While the discussion in the *Mackenzie Oil Case* touching the present subject was obiter, as there pointed out, yet it appears to me as correctly expressive of the law. Until recourse has been had to our receivership statute, I conclude that equity will not treat the assets of an insolvent corporation as a trust fund for the benefit of creditors in the sense that one creditor has a right to be paid his debt *pari passu* with all other creditors similarly situated, and that, if he is not so paid, he may hold the directors accountable as for a breach of trust. Whether director-debtors or others who are similarly circumstanced in point of advantage are to be excepted from those who may be favored by payment in full, is a question which I do not pass upon, it not being presented by the case.

The result of the foregoing is that if a receiver were appointed in this case, he could not accomplish the only end which, according to the bill, his appointment is designed to serve. This result is arrived at without regard to the question of whether the right of action which the complainant would desire a receiver to assert is one that belongs to the corporation, which he would represent, or to the complainant in his individual right, a question which was suggested at the argument, but one which, because of the foregoing, I need not pass upon.

Neither is it necessary to notice the grounds of multifariousness, misjoinder and laches, the first of which was

waived. The sustaining of the demurrer on the principal ground, renders unnecessary any decision upon the questions of misjoinder and laches.

Order accordingly.