Evelyn **BELLIS**, **Administratrix of the Goods and Chattels and Credits of Allen M. Bellis, Deceased**

v.

**MORGAN TRUCKING, INC., and Ed Norfleet.**

No. 88-1-361.

United States District Court, D. Delaware, Wilmington Division.

May 10, 1974.

## OPINION AND ORDER RE MOTIONS TO VACATE ATTACHMENT

EDWIN D. STEEL, Jr., Senior District Judge:

On June 26, 1973, Evelyn Bellis, as administratrix, etc. ("Bellis") recovered a judgment in the United States District Court for the Eastern District of New York against Morgan Trucking, Inc. ("Trucking, Inc.") a Delaware corporation, and Ed Norfleet, in the amount of $300,000.00, together with interest from the 13th day of September, 1972, at the rate of six per cent per annum and costs. The defendants took no˙ appeal from the judgment. On March 26, 1974, a certified copy of the judgment was filed with the Clerk of this Court in accordance with 28 U.S.C. § 1963. The same day the judgment creditor caused the Clerk to issue a writ of execution.[1] It was executed by a Deputy United States Marshal.

The Marshal's return states that he executed the writ on March 28, 1974, by seizing and attaching the following:

(a) a tract of˙ land, containing 88 acres, more or less, described in Deed Book 474, page 455, as having been deeded to William B. Morgan, Jr., and Marceil E. Morgan, his wife, together with buildings erected thereon. Service of papers, purportedly effecting the attachment, was made upon William B. Morgan, Jr., as the "owner of said property."

(b) a "Cinder Block Building" located on the above property "which is used for truck maintenance by the defendant, Morgan Trucking, Inc.". Service of papers purportedly effecting the attachment was made upon William H. Morgan, President of Morgan Trucking, Inc.

Two motions have been filed to vacate the attachment. One is by Trucking, Inc., the judgment debtor. It is directed against the attachment of the cinder block building upon the ground that Trucking, Inc. has no interest, legal or

Thomas D. Runnels, and David N. Williams, Cooch & Taylor, Wilmington, Del., for plaintiffs.

Robert L. Halbrook, Wilson & Halbrook, Georgetown, Del., for defendants.

1. This was a writ of Fieri Facias under Delaware law. See F.R.Civ.P. 69(a).

equitable, in the building. The other is by William B. Morgan, Jr. and Marceil E. Morgan (the "Morgans") on the ground that they individually are the owners of all of the property which Bellis purported to attach.

The motions require consideration of two questions: (1) did the property attached belong to the judgment debtor, Trucking, Inc., and if it did not, (2) was it nevertheless subject to attachment by Bellis, the judgment creditor, because of the relationship and transactions between Trucking, Inc. and the Morgans?

Trucking, Inc. was incorporated under Delaware law on February 9, 1962, and so far as the records of the Office of the Secretary of State disclose, it was in good standing and had a legal corporate existence on April 24, 1974. The incorporators were the Morgans and their sons, William H. Morgan, and Ronnie J. Morgan. These four persons have at all times been directors of the company, although it appears that in 1969 Sandra Morgan and Carol Morgan, wives of the sons of the Morgans, also became directors. William H. Morgan has at all times been President of the company. Since it was organized none of the stock has been held by anyone outside of the Morgan family. When from time to time the company was in need of funds to purchase equipment, meet overdrafts and the like, one or the other of the Morgans made advances to the company for such purpose. In 1964, the Morgans secured their advances by placing a lien on the trucks by way of a chattel mortgage for approximately $26,000.00, the indebtedness represented thereby being $26,650.00 on December 31, 1972.

Initially the corporation conducted a trucking business on its own behalf, but since 1967, it has confined its activities to leasing equipment to others.

The affairs of the company, corporate and financial, were handled most infor-

mally. While rough, long-hand notes were kept of directors' meetings, no typewritten minutes were prepared until the early part of 1974 when more formal minutes, covering the entire period of the corporation's existence, were typed from the long-hand notes.[2] The company kept no books of account of any formal kind. Such bookkeeping that did occur was done on a monthly basis by an accountant, Mr. Daino, who reviewed original records—bills, time sheets kept for payroll purposes, etc.—for the purpose. In later years, he also prepared income tax returns for the company.

### Ownership of Attached Property

On May 27, 1957, Lester E. Banning, Jr., and Marjorie S. Banning, his wife, conveyed in fee simple to William B. Morgan, Jr. and Marceil E. Morgan, his wife, the 88 acres of land purported to have been attached. At no time thereafter did the Morgans convey the land to anyone else.

On February 3, 1967, a written lease was executed by the Morgans and Trucking, Inc. under which the Morgans leased to Trucking, Inc. (1) the 88 acres which they had acquired from the Bannings and buildings consisting of a dwelling and barn or shop, as well as other buildings thereon with sufficient yard space to garage, store and repair trucks, (2) a portion of their home to be used as the office of the company, and (3) a shop unit consisting of tools and office furniture equipment (Dx 1). In consideration Trucking, Inc. agreed to pay for the utility charges and maintenance expenses of the leased property, such as any repairs, painting and roofing. The lease provided:

"Any improvements on property while under lease and in use to be property

2. A disparity exists between the number of shares which the long-hand notes stated should have been issued and those shown in the typed minutes to have been issued. Another disparity exists between two sets of stock certificates which reflect different numbers of shares purportedly issued when the company was organized. The differences were adequately explained and the Court does not deem the differences relevant to the issues involved save as it emphasizes the informal and at times casual way in which the affairs of the company were conducted.

of the second part [the Morgans] in fee simple title.

\* \* \* \* \* \*

Any improvements, maintenance, enhancements, to present facilities and property, replacements, additions, are to become the property of the second party [the Morgans] and be considered as rent for the use of said property and facility."

The lease was terminable on notice by either party at any time when Trucking, Inc. had no use for the property.

On June 6, 1973, a meeting of the Board of Directors was held. William H. Morgan reported that he had received a telephone call from his father, William B. Morgan, Jr., who was in Florida, stating that (1) the attorney for Bellis, the plaintiff in the New York action, had moved in New York to have the trial begin at once instead of in September, 1973, as previously set, and (2) he had decided to "foreclose his judgement (sic)" at once.[3] Thereupon a motion was made and carried to the effect that the company should cease operation and turn over "voluntary or by law" any assets it had "to the extent of William B. Morgan's loans and judgement (sic) and give it up for a bad deal." (Px 11). Two days later, on June 8, 1973, Trucking, Inc. advised the Morgans in writing (Dx 2) that the trucking business had ceased and that it had no further need of the property which it had leased from them on February 3, 1967, for the continuation of its business.[4] On the same date Trucking, Inc. executed a judgment note in the amount of $32,335.70 payable to William B. Morgan, Jr., secured by a security agreement which purported to

give him a security interest in specified property of the company consisting of trailers, tractors, shop tools, shop equipment, bolts and bins and office equipment. (Px 10 and 10A).

In 1968 or 1969 a windstorm blew down at least one of the walls of one of the buildings covered by the lease. It was reconstructed at a cost of between $17,000.00 and $20,000.00. Whether the monies used for the construction represented monies which the company had on hand or were advances by the Morgans, is unclear. In any event the source of the money is irrelevant since on June 8, 1973, the lease was terminated and all interest of the trucking company in the leased property ended and the property reverted to the Morgans. The building which was reconstructed after the windstorm comprised in whole or in part the cinder block building which was the subject, in addition to the farm, of the March 28, 1974 attachment.

█ From what has been said it is clear that Trucking, Inc. had no interest, legal, equitable or otherwise, in any of the property which on March 28, 1974, Bellis purported to attach and that the property belonged to the Morgans individually on that date.

*Attachability of the Morgans' Property*

█ Bellis argues that even if Trucking, Inc. had no interest in the attached property when the attachment was laid, and the property was then, and now is, owned by the Morgans individually, the attachment should, nonetheless, be upheld. This is upon the theory that Trucking, Inc. never was a validly organized company. Without passing

---

3. Whether this referred to the lien of the prior chattel mortgage which had been placed on the trucks and equipment is not clear.

4. On March 19, 1969, the Board of Directors of Trucking, Inc. carried a motion unanimously to accept an offer made at the meeting by William B. Morgan, Jr. to permit Trucking, Inc. to use "the farm house and land, enough to serve Incorporation demands." (Px 2) No agreement reflecting

the offer and acceptance was reduced to writing nor so far as appears was such an agreement ever given effect, legally or otherwise, by the Morgans or Trucking, Inc. In furtherance of the determination by the Board of Directors of Trucking, Inc. on June 6, 1973, to cease further operation of the company, the latter recognized by the terms of its lease termination notice that the lease agreement of February 3, 1967, was the only valid lease under which it had operated.

upon the merits of this contention, it is one which Bellis is estopped to make. In New York Bellis obtained the judgment against Trucking, Inc., qua corporation. It is that judgment which is the basis of the claimed attachment. In 8 Fletcher Cyclopedia Corp., § 3944 (Perm. ed. 1966) the author states:

"A person who sues a corporation as such thereby admits the legality of its incorporation, and is estopped from denying it in that suit."

The attachment which Bellis sought to effect is an extension of the New York suit and is subject to the rule stated above by Fletcher.

Bellis also contends that Trucking, Inc.'s termination of its lease with the Morgans constituted a fraudulent conveyance under Delaware law. 6 Del.C. § 1301 et seq. If it did, the real estate and cinder block building were subject to attachment even though at the time of the attachment they were not owned by Trucking, Inc. but were owned by the Morgans individually. 6 Del.C. § 1309(a)(2). Neither the real estate nor the cinder block building was ever owned by Trucking, Inc. During the period of the lease, its interest in those properties was that of a lessee. So long as the lease continued to exist, Bellis argues, Trucking, Inc. possessed an equitable interest in the property which was subject to attachment. Upon this premise, the argument continues, when Trucking, Inc. terminated the lease on June 8, 1973, this constituted a "release" and by definition under 6 Del.C. § 1301, a "conveyance". Hence, Bellis concludes, it was a fraudulent conveyance under 6 Del.C. §§ 1306 and/or 1307.

Section 1306 provides:

"Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

Section 1307 provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Neither of these sections is applicable to the termination of its lease by Trucking, Inc. Essential to the operation of each section is a determination that Trucking, Inc. effected a "release" and hence a "conveyance" when it terminated the lease. The argument of Bellis that the lease termination constituted a "release" within the intendment of § 1301 is a falacious one.

The use of the term "release" with its associated expressions—"payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance"—shows that the legislature intended it to include actions by a debtor designed to separate himself from assets which otherwise might be used to pay creditors. See 2A Sutherland Statutory Construction, § 47.16, (4th ed. 1973). Discharge by a debtor of monies owed to him would be one type of release falling within the ambit of § 1301.

The lease between Trucking, Inc. and the Morgans, being terminable upon notice by either party, constituted a tenancy at will. 49 Am.Jur.2d, Landlord and Tenant, § 74 (1970). Such a tenancy cannot be assigned by a tenant to another, and any attempt by the tenant to do so terminates the estate. *Id.*, § 401. A purchaser of a leasehold estate at an execution sale stands in the position of an assignee at law of such estate, with substantially the same rights as if it had been voluntarily assigned to him by the lessee. *Id.* § 396.

Since Trucking, Inc. was a tenant at will, its interest was not assignable either voluntarily or involuntarily and any attempt to effect an assignment by ei-

ther means terminated the leasehold interest. It was not an asset which Trucking, Inc. could sell for the purpose of realizing monies with which to pay claims of its creditors. The voluntary termination by Trucking, Inc. was not a "release" within the meaning of 6 Del.C. § 1301.

The motions to vacate the attachment of the 88 acres of land and the cinder block building are granted.

The attorney for the moving parties claims that the attachment is invalid because a certified copy of the New York judgment was not recorded in Sussex County where the execution took place. It is not necessary to pass upon this question in view of the disposition which has been made of the motions.

Nothing said in this opinion is intended to affect the rights of the parties in and to the proceeds of the sheriff's sale of the trucks and equipment, etc. of Trucking, Inc. held on August 18, 1973, as a result of the execution by William B. Morgan, Jr. upon a default judgment he obtained against Trucking, Inc. for $32,335.70.

So ordered.