Thomas P. GEYER, Plaintiff,

v.

INGERSOLL PUBLICATIONS COMPA-
NY, a Delaware corporation, and Ralph
Ingersoll II, Defendants.

Civ. A. No. 12406.

Court of Chancery of Delaware,
New Castle County.

Submitted: June 16, 1992.
Decided: June 18, 1992.

Andrew J. Turezyn, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for plaintiff.

Gregory P. Williams, Matthew J. Ferretti, and Sean P. McDevitt, of Richards, Layton & Finger, Wilmington, for defendants.

## OPINION

CHANDLER, Vice Chancellor.

Plaintiff, Thomas P. Geyer, instituted this action against defendants, Ingersoll Publications Company ("IPCO") and Ralph Ingersoll II, alleging, *inter alia*, breaches of fiduciary duties, fraudulent conveyances and the right to a judgment on a promissory note (the "Note"). Mr. Ingersoll has moved to dismiss all of plaintiff's claims and to stay discovery pending the resolution of his motion to dismiss. In addition, IPCO has moved for judgment on the pleadings as to count II of plaintiff's complaint.

This is my decision on defendants' motions. Part I of the decision provides a brief factual history. Part II addresses Mr. Ingersoll's motion to dismiss all of plaintiff's claims. Part III considers Mr. Ingersoll's motion to stay discovery. Part IV addresses IPCO's motion to dismiss

count II of plaintiff's complaint. Finally, part V contains my conclusions.

## I. FACTUAL HISTORY

According to the complaint, Mr. Geyer and Mr. Ingersoll, a resident of Connecticut, were principals in a partnership involved in the business of managing newspapers in the late 1970s or early 1980s. Subsequently, the principals replaced the partnership structure with a corporate structure causing the formation of IPCO, a Delaware corporation. Mr. Geyer and Mr. Ingersoll each received shares in the new entity, IPCO, in return for their interests in the partnership. Indeed, plaintiff received 40 shares of IPCO and became an employee of IPCO. Mr. Ingersoll became the President, Chairman of the Board and controlling shareholder of IPCO.

In addition to his dealings with IPCO, Mr. Ingersoll together with E.M. Warburg, Pincus & Co. ("Warburg"), a New York investment firm, assembled an international publishing empire in the late 1980s. Ultimately, after a dispute in 1990, Warburg and Mr. Ingersoll divided their empire at the Atlantic Ocean, with Mr. Ingersoll retaining ownership of the international newspapers and Warburg retaining ownership of the domestic newspapers.

Before Mr. Ingersoll's dispute with Warburg, IPCO repurchased Mr. Geyer's IPCO shares in the fall of 1988 in return for the Note in the principal amount of $2 million. The Note obligated IPCO to make monthly payments of principal and interest in increasing amounts with a balloon payment of nearly $1 million due on October 15, 1991. However, plaintiff argues that IPCO failed to make its June 15, 1991, payment and has failed to make any payments since that time.

According to plaintiff, Mr. Ingersoll caused IPCO to surrender its major assets to third parties in return for his personal benefit, at the expense of IPCO, while IPCO remained indebted to Mr. Geyer. Plaintiff provides two examples of such conduct: (1) plaintiff alleges that Mr. Ingersoll caused IPCO to cancel a management agreement with Goodson Newspapers ("Goodson"), which agreement was worth approximately $50 million, in return for an agreement by Goodson to sell the New Haven Register to Warburg and Mr. Ingersoll; and (2) plaintiff alleges that when Warburg and Mr. Ingersoll divided their empire, Mr. Ingersoll caused IPCO to cancel its management agreements with domestic newspapers in return for Mr. Ingersoll receiving the British and Irish holdings held by Warburg and Mr. Ingersoll.

## II. MR. INGERSOLL'S MOTION TO DISMISS

Mr. Ingersoll bases his motion to dismiss on two separate grounds. First, he argues that this Court lacks personal jurisdiction over him. Second, he argues that plaintiff fails to state a claim for which I can grant relief.

### A. *Personal Jurisdiction*

Mr. Ingersoll contends that in order for this Court to exercise personal jurisdiction over him, there must be statutory authorization for service of process. Also, he argues, such service must not violate the fundamental fairness required by the 14th Amendment of the United States Constitution. Mr. Ingersoll contends that there is no statutory authorization for service of process upon him and, if there was, such service would violate his 14th Amendment due process rights.

#### 1. Statutory Service of Process

Plaintiff purportedly served Mr. Ingersoll with process pursuant to 10 *Del.C.* § 3114(a) (Supp.1990). This statute provides that a nonresident of Delaware who accepts a position as a director of a Delaware corporation is

deemed [ ] to have consented [from his acceptance of the directorship position] to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as his agent upon whom service of process may be made in all civil actions or proceedings brought in this state, by or on behalf of, or against such corporation, in which such director, trustee or member is a

necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, whether or not he continues to serve as such director, trustee or member at the time suit is commenced.

*Id.*

Mr. Ingersoll argues that Mr. Geyer lost his status as a shareholder when he sold his shares to IPCO. Therefore, Mr. Ingersoll contends, Mr. Geyer is merely a creditor of IPCO. According to Mr. Ingersoll, directors do not owe creditors duties beyond the relevant contractual terms absent fraud, insolvency or a violation of a statute. Thus, Mr. Ingersoll argues, since § 3114 authorizes service of process upon nonresident directors only in limited circumstances (*e.g.*, for breaches of fiduciary duties) which are not applicable to this case, no statutory authorization exists for service of process upon him.

Mr. Geyer responds by arguing that directors owe creditors fiduciary duties no later than when insolvency exists in fact. Furthermore, plaintiff argues, IPCO was, in fact, insolvent. Accordingly, plaintiff contends that Mr. Ingersoll owed Mr. Geyer fiduciary duties and, therefore, that § 3114 is statutory authorization for service of process upon Mr. Ingersoll.

Mr. Ingersoll contends that plaintiff mistakenly applies the insolvency exception. That is, Mr. Ingersoll argues that for the insolvency exception to apply, some sort of statutory proceedings (*e.g.*, bankruptcy) must have begun rather than insolvency merely existing in fact. Without such a rule, Mr. Ingersoll argues, the transaction costs of running a corporation that was bordering on insolvency in fact would be overwhelming.

In order for a Delaware court to exercise personal jurisdiction over a nonresident defendant, a Delaware statute must authorize the obtaining of jurisdiction over that defendant. *See In re Cambridge Fin. Group, Ltd.*, Del.Ch., C.A. No. 9279, Hartnett, V.C. (Nov. 9, 1987), Ltr. Op at 4, 1987 WL 19677. The parties do not dispute that § 3114 authorizes service of process upon a nonresident director for breaches of fiduciary duties. However, the parties do dispute whether Mr. Ingersoll owed Mr. Geyer, a creditor, fiduciary duties.

 As Mr. Ingersoll states, the general rule is that directors do not owe creditors duties beyond the relevant contractual terms absent "special circumstances ... *e.g.*, fraud, insolvency, or a violation of a statute...." *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215, 222 (1974), *rev'd in part on other grounds*, Del.Supr., 347 A.2d 133 (1975). Furthermore, neither party seriously disputes that when the insolvency exception does arise, it creates fiduciary duties for directors for the benefit of creditors. Therefore, the issue the parties present to me is *when* do directors' fiduciary duties to creditors arise via insolvency.[1] That is, I must decide whether insolvency arises so as to create a fiduciary duty to creditors when insolvency exists in fact or when a party institutes statutory proceedings (*e.g.*, bankruptcy proceedings).

Two factors lead me to conclude that insolvency means insolvency in fact rather than insolvency due to a statutory filing in defining insolvency for purposes of determining when a fiduciary duty to creditors arises. The first and more important factor is that Delaware caselaw requires this conclusion. Indeed, one case explicitly states that "[t]he fact which creates the trust [for the benefit of creditors] is the insolvency, and when that fact is established, the trust arises, and the legality of the acts thereafter performed will be decided by very different principles than in the case of solvency." *Bovay v. H. M. Bylles-*

---

1. In resolving this issue of when do fiduciary duties to creditors arise via insolvency, I note that the language in *Hoover Indus., Inc. v. Chase*, Del.Ch., C.A. No. 9276, Allen, C. (July 13, 1988), Mem.Op. at 7, 1988 WL 73758, which states that a court should construe the terms of § 3114 liberally, is not helpful because I refuse to use different interpretative guidelines for the determination of the existence of a fiduciary duty for personal jurisdiction purposes than for actual liability purposes. That is, either the fiduciary duty existed or did not exist no matter why its existence is an issue.

*by & Co.*, Del.Supr., 38 A.2d 808, 813 (1944) (citing *McDonald v. Williams*, 174 U.S. 397, 19 S.Ct. 743, 43 L.Ed. 1022 (1899)). This passage clearly states that it is the fact of insolvency which causes the duty to creditors arise. Moreover, the case cited by *Bovay* buttresses this conclusion because in its discussion of the distinction between the rights of creditors to a solvent company from the rights of creditors to an insolvent company, the Court, in effect, defines insolvency as a corporation in which the value of its assets has sunk below the amount of its debts. *McDonald*, 174 U.S. at 403, 19 S.Ct. at 745. *McDonald* does not suggest that the institution of statutory proceedings is relevant to the definition of when an entity is insolvent.

Mr. Ingersoll cites a number of cases that purportedly stand for the proposition that insolvency means the institution of statutory proceedings. However, I disagree with his interpretation of those cases. First, in *Kidde Indus., Inc. v. Weaver Corp.*, Del.Ch., 593 A.2d 563 (1991) and in *Gans v. MDR Liquidating Corp.*, Del.Ch., C.A. No. 9630, Hartnett, V.C. (Jan. 10, 1990), 1990 WL 2851 the Courts, in deciding whether personal jurisdiction existed over directors, noted that the directors owed creditors fiduciary duties since the entities had filed for dissolution. In so ruling, the Courts did not hold that the institution of statutory proceedings was a prerequisite to the applicability of the insolvency exception. Rather, by so ruling, the Courts were defining a fourth [2] category (*i.e.*, the institution of dissolution proceedings) of "special circumstances." I find this to be the case because both cases cite *Bovay* with approval and *Bovay* explicitly states that a fiduciary duty to creditors arises when insolvency exists in fact and because it is not necessary for a company to be insolvent in fact in order to dissolve and a holding that *Kidde* and *Gans* stand for the proposition that insolvency means the institution of statutory proceedings would render the use of the word insolvent by the Court in *Harff* meaningless.

Mr. Ingersoll also relies on *Asmussen v. Quaker City Corp.*, Del.Ch., 156 A. 180 (1931), in arguing that the institution of statutory proceedings are necessary for the insolvency exception to apply and cause directors to owe creditors fiduciary duties. However, as plaintiff argues, the Court's holding was much more narrow than Mr. Ingersoll argues. That is, the Court merely held that the institution of such proceedings were necessary in order for the establishment of fiduciary duties to creditors as to claims that the directors unjustly preferred one creditor over another. The Court in *Asmussen* did not hold that the institution of statutory proceedings was necessary for the establishment of fiduciary duties via the insolvency exception as to claims against directors for unjustly favoring shareholders over creditors, committing corporate waste or favoring creditors who are also directors over all other creditors.

The basis for my conclusion that the *Asmussen* decision was so limited is twofold. First, the Court stated that "[i]f an insolvent corporation should undertake to turn its assets over to stockholders, leaving creditors unpaid, I think no dissent can be found to the proposition that the law would condemn the effort." *Id.* at 181. Since the Court makes a distinction between the institution of statutory proceedings and the existence of insolvency in fact throughout the decision, the Court's failure to mention that the institution of statutory proceedings is necessary in order to justify such condemnation clearly means that it viewed the condemnation justified by the existence of insolvency in fact, alone, under those circumstances. Second, a later case, in effect, holds that the *Asmussen* decision was limited to the applicability of the insolvency exception to claims that directors preferred certain creditors over others since the Court in the later decision noted that the general rule created by *Asmussen*, in creating an exception to the *Asmussen* holding as to the preference of creditors who are directors, was that it allowed directors of an insolvent corporation to prefer one creditor over another unless someone had

---

**2.** The three other categories are the original examples of "special circumstances": fraud, in-

solvency or a violation of a statute. *See Harff*, 324 A.2d at 222.

instituted statutory proceedings. *Pennsylvania Co. for Ins. on Lives and Granting Annuities v. South Broad St. Theatre Co.*, Del.Ch., 174 A. 112, 115–116 (1934).

Mr. Ingersoll's reliance on *Continental Ill. Nat'l Bank and Trust Co. of Chicago v. Hunt Int'l Resources Corp.*, Del.Ch., C.A. No. 7888, Jacobs, V.C. (Feb. 27, 1987), 1987 WL 55826 also is not persuasive. In that case, the Court merely held that a creditor could not maintain a claim for breach of fiduciary duty, as distinguished from a claim for fraud, against a director based on allegations of fraud. *Id.* at 9. The Court did not address the issue of when fiduciary duties to creditors arise via insolvency.

■ Besides Delaware caselaw, the other factor upon which I rely in holding that the insolvency exception arises upon the fact of insolvency rather than the institution of statutory proceedings is the ordinary meaning of the word insolvency. An entity is insolvent when it is unable to pay its debts as they fall due in the usual course of business. Webster's Ninth New Collegiate Dictionary 626 (1988). That is, an entity is insolvent when it has liabilities in excess of a reasonable market value of assets held. *Id.* Although there may be other definitions of insolvency that are slightly different, I am not aware of any authority which indicates that the ordinary meaning of the word insolvency means the institution of statutory proceedings.

Parenthetically, Mr. Ingersoll expends considerable effort in arguing that policy concerns suggest that I should interpret the insolvency exception to arise upon the institution of statutory proceedings. While it is true, as Mr. Ingersoll argues, that defining the exception as arising when statutory proceedings have begun would give directors a clear and objective indication as to when their duties to creditors arise, there are other policy concerns which suggest that I interpret the insolvency exception to arise when insolvency exists in fact. That is, it is efficient and fair to cause the insolvency exception to arise at the moment of insolvency in fact rather than waiting for the institution of statutory proceedings.

*See Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, Del.Ch., C.A. No. 12150, Allen, C. (Dec. 30, 1991), Mem.Op. at 83 n. 55, 1991 WL 277613. The existence of the fiduciary duties at the moment of insolvency may cause directors to choose a course of action that best serves the entire corporate enterprise rather than any single group interested in the corporation at a point in time when shareholders' wishes should not be the directors only concern. Furthermore, the existence of the duties at the moment of insolvency rather than the institution of statutory proceedings prevents creditors from having to prophesy when directors are entering into transactions that would render the entity insolvent and improperly prejudice creditors' interests.

Mr. Ingersoll also contends as a policy matter that if I hold the insolvency exception to mean insolvency in fact, a court could hold a director of an insolvent in fact corporation liable to creditors but not liable to shareholders due to the scope of the statutory provision allowing the elimination of director liability (*i.e.*, 8 *Del.C.* § 102(b)(7) (1991)), according to Mr. Ingersoll's interpretation of the scope of § 102(b)(7). In response to this argument, I first note that even if I assume that only my particular interpretation of the insolvency exception will cause this purported anomaly to arise, there is nothing I can do to rectify it since I still believe that Delaware caselaw and the ordinary meaning of the word insolvency require the interpretation of the insolvency exception which I have adopted. Second, the existence of the anomaly does not depend on the particular interpretation of the insolvency exception which I adopt since, under Mr. Ingersoll's interpretation of the scope of § 102(b)(7), the anomaly would exist even if I adopted his interpretation of the insolvency exception. That is, even if I held that the insolvency exception arises when statutory proceedings have begun, a court could hold a director of a corporation, for which statutory proceedings had begun, liable to creditors but not liable to shareholders, under Mr. Ingersoll's interpretation of the scope of § 102(b)(7).

Ultimately, I find that Delaware caselaw, primarily, and the ordinary meaning of the word insolvency, secondarily, require me to hold that fiduciary duties to creditors arise when one is able to establish the fact of insolvency. Furthermore, I find that policy concerns do not necessarily call for a different conclusion. Thus, § 3114 provides a statutory basis for jurisdiction over Mr. Ingersoll. Accordingly, I deny Mr. Ingersoll's motion to dismiss based on his argument that this Court lacks a statutory basis for the exercise of jurisdiction over him.

## 2. Due Process

■ Mr. Ingersoll also argues that this Court lacks personal jurisdiction over him because the exercise of such jurisdiction would violate his due process rights. That is, Mr. Ingersoll argues that his only contacts with this state were his status as a director of IPCO. He argues that this directorship is not a sufficient contact since he owed no fiduciary duty to plaintiff during the relevant time period because a statutory proceeding had not begun.

It does appear that Mr. Ingersoll's contacts with this state solely consist of his status as a director of IPCO, a Delaware corporation. However, as is clear from my discussion of the insolvency exception, above, fiduciary duties to creditors arise at the moment of insolvency rather than at the moment of the institution of statutory proceedings. Therefore, assuming IPCO was insolvent during the relevant time periods,[3] Mr. Ingersoll owed Mr. Geyer fiduciary duties. Furthermore, by virtue of his acceptance of the directorship position, Mr. Ingersoll has consented to service of process in lawsuits based on a breach of his fiduciary duties as a director of IPCO. See Kidde, 593 A.2d at 566. Moreover, Mr. Ingersoll should have reasonably anticipated being haled into a Delaware court for this type of lawsuit under § 3114 given the language in Bovay and the ordinary mean-

ing of the word insolvency. Therefore, I find that the exercise of personal jurisdiction over Mr. Ingersoll in this case would not violate his due process rights. Accordingly, I deny Mr. Ingersoll's motion to dismiss with respect to his argument that the exercise of personal jurisdiction over him by this Court would violate his due process rights.

## B. Failure to State a Claim

■ In deciding the facet of Mr. Ingersoll's motion to dismiss which alleges that plaintiff has failed to state a claim upon which I can grant relief, I note that I must take all well plead allegations of the complaint as true. See Good v. Getty Oil Co., Del.Ch., 518 A.2d 973, 975 (1986). Further, I must construe all inferences in the light most favorable to plaintiff. Weinberger v. UOP, Inc., Del.Ch., 409 A.2d 1262, 1263 (1979), rev'd on other grounds, Del.Supr., 457 A.2d 701 (1983). However, I also note that the motion does not concede conclusory allegations of law or fact which plaintiff does not support with allegations of specific facts. Glaser v. Norris, Del.Ch., C.A. No. 9538, Chandler, V.C. (Jan. 6, 1992), Op. at 7, 1992 WL 14960. Ultimately, given these guidelines, I cannot grant Mr. Ingersoll's motion unless it appears with a reasonable certainty that plaintiff would not be entitled to the relief sought under any set of facts which could be proven to support the action. Rabkin v. Philip A. Hunt Chem. Corp., Del.Supr., 498 A.2d 1099, 1104 (1985).

## 1. Count I

■ Count I of plaintiff's complaint purportedly states a claim for breach of fiduciary duty. Mr. Ingersoll argues that I should grant his motion with respect to count I because he did not owe Mr. Geyer, a creditor, fiduciary duties and because plaintiff's allegations of insolvency are conclusory.

---

**3.** Mr. Ingersoll does not argue that IPCO was not insolvent or that plaintiff has failed to allege insolvency sufficiently in this part of his argument. Rather, Mr. Ingersoll relies on his argument that fiduciary duties to creditors arise via the insolvency exception at the moment statuto-

ry proceedings have begun in arguing that the exercise of jurisdiction over him would violate his due process rights. Accordingly, I address the sufficiency of plaintiff's insolvency allegations in part II.B. of my decision.

Mr. Ingersoll's argument that he could not have owed Mr. Geyer fiduciary duties obviously is without merit. As stated throughout this decision, it is the fact of insolvency and not the institution of statutory proceedings which causes fiduciary duties to creditors to arise. Moreover, plaintiff alleges that IPCO was insolvent (Comp. ¶¶ 16, 21, 29) and that, during the two years subsequent to the consummation of the repurchase agreement, IPCO's substantial assets were so liquidated that its liabilities probably were greater than the value of its assets (Comp. ¶¶ 13, 17). More specifically, plaintiff alleges that, in December 1989, Mr. Ingersoll caused IPCO to give up an asset worth approximately $50 million for consideration primarily paid to Mr. Ingersoll and Warburg (Comp. ¶ 14), that, in 1990, Mr. Ingersoll caused IPCO to cancel valuable management agreements with the domestic newspapers retained by Warburg in return for consideration paid to Mr. Ingersoll (Comp. ¶ 15) and that, as a result of the transactions, IPCO failed to make payments due to plaintiff because it was unable (Comp. ¶ 11). Although these allegations do not completely persuade me that IPCO was insolvent in fact, I find that they sufficiently allege specific facts which support plaintiff's claim that IPCO was insolvent for purposes of defendants' motion to dismiss. Accordingly, I deny Mr. Ingersoll's motion to dismiss with respect to his argument that count I of the complaint fails to state a claim for which I can grant relief.

### 2. Count II

Count II of plaintiff's complaint purportedly states a claim for fraudulent conveyance based on IPCO's cancellation of its management agreements. Mr. Ingersoll argues that this claim is conclusory. More specifically, he argues that plaintiff has failed to plead adequately, under the relevant statutory scheme, that IPCO's cancellations of its management agreements were "conveyances," that IPCO did not receive "fair consideration" in exchange for the cancellations and that the cancellations rendered IPCO "insolvent."

■ Under the Fraudulent Conveyances Act, the term conveyance "includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance." 6 Del.C. § 1301(2) (1974). The parties' dispute with regard to the term "conveyance" rests on their dispute as to whether the cancellation of the management agreements constitutes a release as the term is used in § 1301(2). The Legislature intended the term release to include actions by a debtor to separate himself from assets which otherwise might be used to pay creditors. *Bellis v. Morgan Trucking, Inc.*, 375 F.Supp. 862, 866 (D.Del.1974).

■ Mr. Ingersoll's principal argument is that the cancellation of the management agreements is not a release within § 1301(2) because IPCO could not transfer or assign the agreements. It is true that, in *Bellis*, the Court relied, in part, on the non-transferable nature of the lease in holding that the cancellation of the lease was not a release. *Id.* at 866–67. However, the situation in this case is fundamentally distinct from the facts in *Bellis*. That is, the corporation-debtor in *Bellis* canceled its lease with its *landlord*. In form and in substance, the lease was a liability to the corporation since it was not transferable and represented a duty to pay. In this case, however, the management contracts represented an asset to IPCO. By canceling the management agreements, IPCO did not give up a duty to pay, as was the case in *Bellis*. Rather, it gave up the right to a steady stream of income. Accordingly, I find that the alleged management agreement cancellations fall within the ambit of the term release as defined by § 1301(2) because the agreements were assets that IPCO could have used to pay its creditors notwithstanding the fact that IPCO could not transfer the agreements.

■ Mr. Ingersoll also argues that plaintiff's allegations that the transactions were not made with fair consideration are conclusory. A facet of the Fraudulent Conveyances Act is the necessity of the property received in exchange for the prop-

erty given up by the debtor in a particular transaction as being less than "fair consideration," which means a fair equivalent to the property given up, *see* 6 *Del.C.* § 1303(1) (1974). In his complaint, plaintiff alleges that IPCO received less than fair consideration in the transactions at issue. (*See* Comp. ¶¶ 13, 28.) More specifically, plaintiff alleges that IPCO gave up a $50 million asset in exchange for an agreement by Goodson to sell the New Haven Register to Mr. Ingersoll and a release of Goodson's claims against IPCO. (Comp. ¶ 14.) Given the fact that part of the consideration went to Mr. Ingersoll rather than IPCO and that the value of the consideration paid to IPCO allegedly was meager,[4] plaintiff sufficiently alleges specific facts to support his claim that IPCO did not receive fair consideration in the transaction so as to withstand Mr. Ingersoll's motion to dismiss.

The same conclusion is true with respect to the transaction whereby IPCO canceled its management contracts with the domestic newspapers. (*See* Comp. ¶ 15.) It certainly appears reasonable to infer that these contracts were valuable money making rights to IPCO because newspaper management was IPCO's business. It would not have been in this business if these contracts did not generate income. Thus, it appears from the complaint that IPCO gave up this valuable right for consideration that went completely to Mr. Ingersoll. Such an allegation sufficiently supports plaintiff's averment that IPCO did not receive fair consideration from the transaction.

In addressing Mr. Ingersoll's argument regarding the term "insolvency", I note that a court may deem a conveyance fraudulent if the person making the conveyance "is or will be thereby rendered insolvent...." 6 *Del.C.* § 1304 (1974). Furthermore, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." 6 *Del.C.* § 1302(a) (1974).

In his complaint, plaintiff alleges that IPCO surrendered its major assets in exchange for paltry consideration beginning in 1989. (Comp. ¶¶ 13, 28.) More specifically, plaintiff alleges that IPCO canceled its management agreement with Goodson, which was worth approximately $50 million, and its management agreements with the domestic newspapers retained by Warburg in exchange for little or no consideration. (Comp. ¶¶ 14, 15.) As a result of these transactions, plaintiff alleges, IPCO was rendered insolvent and unable to pay its liability to plaintiff. (Comp. ¶¶ 6, 16, 29.) Given that insolvency is a matter likely to be peculiarly within the knowledge of IPCO and Mr. Ingersoll since plaintiff appears to have left his position at IPCO by October 1988 (*see* Comp. ¶ 7) and given that plaintiff has alleged that IPCO was insolvent and unable to pay Mr. Geyer and provides specific examples of the transactions which purportedly created this situation, I find that plaintiff's averments are not merely conclusory, but rather, sufficiently allege specific facts demonstrating IPCO's insolvency for purposes of Mr. Ingersoll's motion to dismiss.

Since I have found, for purposes of Mr. Ingersoll's motion to dismiss, that plaintiff adequately alleges that the cancellation of the management agreements was a release as defined by § 1301(2), that plaintiff adequately alleges that IPCO did not receive fair consideration, as defined by § 1303(1), in exchange for the cancellation of its management agreements and that plaintiff adequately alleges that IPCO was insolvent or rendered insolvent by the management contract cancellations, I deny Mr. Ingersoll's motion to dismiss count II based on plaintiff's failure to state a claim for which I can grant relief.[5]

---

**4.** I conclude that this part of the consideration is meager according to plaintiff because the plaintiff uses the phrase "[t]he *only* consideration received by IPCO...." (Comp. ¶ 14) (emphasis added).

**5.** In his reply brief, Mr. Ingersoll attempts to expand the scope of his arguments as to count II by arguing that plaintiff has failed to adequately allege that, after the transactions at issue, IPCO was left with unreasonably small capital, 6 *Del.C.* § 1305 (1974), and that Mr. Ingersoll had

### 3. Count III

Count III purportedly provides authority for me to grant plaintiff a judgment on the Note. Mr. Ingersoll argues that count III fails to state a claim upon which I can grant relief because the Note contractually binds Mr. Geyer to look only to IPCO for its satisfaction and because Mr. Geyer has failed to plead facts sufficient to pierce IPCO's corporate veil.

Plaintiff concedes that the Note contains a no recourse provision.[6] However, plaintiff argues that count III states a contract claim against IPCO and an equitable claim, rather than a contract claim, against Mr. Ingersoll. Therefore, according to plaintiff, the no recourse provision does not justify dismissal of count III with respect to Mr. Ingersoll. Moreover, plaintiff contends, he has alleged specific facts that are not merely conclusory but are sufficient to pierce IPCO's corporate veil.

 If count III stated a contract claim against Mr. Ingersoll, I clearly would have to dismiss the claim because of the no recourse provision. *See Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, Del.Ch., C.A. No. 8578, Berger, V.C. (Jan. 27, 1988), Mem.Op. at 6, 1988 WL 5492. However, the complaint purports to hold Mr. Ingersoll liable for the Note not because he is bound contractually, but rather, because he is the alter ego of IPCO. (Comp. ¶ 38.) Such an alter ego claim is distinct from a contract claim and is equitable in nature. *See Mabon, Nugent & Co., supra*, at 7.

Furthermore, the no recourse provision does not bar equitable claims. *Id.*

 As to the sufficiency of plaintiff's alter ego claim, I note that a court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner. *Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, Del.Ch., C.A. No. 8578, Berger, V.C. (Apr. 12, 1990), Mem.Op. at 11, 1990 WL 44267. In this case, plaintiff does make a number of conclusory averments that IPCO was the mere instrumentality of Mr. Ingersoll. (*See* Comp. ¶¶ 6, 13, 38.) However, plaintiff supports these statements with three specific allegations: IPCO canceled its management agreement with Goodson, an asset worth approximately $50 million, basically in exchange for Goodson's agreement to sell the New Haven Register to Mr. Ingersoll (Comp. ¶ 14); IPCO canceled its management agreements with the domestic newspapers retained by Warburg in exchange for Mr. Ingersoll receiving the British and Irish holdings held by Mr. Ingersoll and Warburg (Comp. ¶ 15); and Mr. Ingersoll stated that he, personally, would pay back the balance on the Note (implying that he viewed IPCO's debts as his own) (Comp. ¶ 18). For purposes of the motion to dismiss, these three examples provide sufficiently specific factual allegations to support plaintiff's conclusion that Mr. Ingersoll was the alter ego of IPCO and, therefore, that I can pierce IPCO's corpo-

an actual intent to defraud, 6 *Del.C.* § 1307 (1974). As to the unreasonably small capital issue, plaintiff does allege that the transactions occurred when IPCO was undercapitalized and unable to pay its debts as they became due. (Comp. ¶ 29.) Moreover, the particular capitalization of an entity is a matter likely to be peculiarly within the knowledge of Mr. Ingersoll and IPCO, of which company Mr. Geyer is not an employee. Further, plaintiff gives two concrete examples of the transactions which created this situation. Therefore, at this juncture I find that plaintiff's allegations sufficiently imply that IPCO was left with unusually small capital. Thus, I refuse to hold that plaintiff fails to state a claim under § 1305.

As to the sufficiency of the intent to defraud allegations, I find that the pleading requirements of Chancery Court Rule 9(b) do apply to

a claim under § 1307. *See China Resource Prods. Ltd. v. Fayda Int'l, Inc.*, 788 F.Supp. 815, 819 n. 6 (D.Del.1992). However, I find that plaintiff's complaint satisfies the requirements of Rule 9(b): plaintiff generally avers that Mr. Ingersoll fraudulently surrendered major assets of IPCO to the detriment of IPCO's creditors (Comp. ¶ 13) and specifically identifies the circumstances constituting the fraud (Comp. ¶¶ 14–15). Therefore, I refuse to hold that plaintiff fails to state a claim under § 1307.

6. *The Note states that "no officer, director, employee or agent of Obligor [i.e., IPCO] shall have any liability hereunder in his personal or individual capacity, but, instead, all parties shall look solely to the property and assets of Obligor for satisfaction of claims of any nature arising under or in connection with this Note." (Comp. Exh. B at 3.)*

rate veil and hold Mr. Ingersoll liable on the Note.

Since I have found that plaintiff's claim against Mr. Ingersoll in count III is equitable in nature and not conclusory, I deny Mr. Ingersoll's motion to dismiss count III based on plaintiff's failure to state a claim for which I can grant relief.

### III. MOTION TO STAY DISCOVERY

Since Mr. Ingersoll primarily bases his motion to stay discovery on the pendency of his motion to dismiss and since his motion to dismiss is no longer pending because I have denied it, I deny the motion to stay discovery.

### IV. MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT II

As IPCO argues, "[a] motion for judgment on the pleadings is in the nature of a motion to dismiss or demurrer...." *Gordon v. Rolfe*, Del.Ch., C.A. No. 8171, Jacobs, V.C. (Feb. 26, 1986), Mem.Op. at 5, 1986 WL 2634. Indeed, a court may grant a judgment on the pleadings when the admitted facts "clearly entitle the moving party to judgment." *Id.* Given my analysis of count II under Mr. Ingersoll's motion to dismiss, above, I obviously do not believe that IPCO is clearly entitled to a judgment. Therefore, I deny IPCO's motion for a judgment on the pleadings with respect to count II of plaintiff's complaint,

### V. CONCLUSIONS

I hold that there is a statutory basis for this Court's exercise of jurisdiction over Mr. Ingersoll and that the exercise of such jurisdiction would not violate his due process rights. Therefore, I deny Mr. Ingersoll's motion to dismiss based on this Court's lack of personal jurisdiction over him. Also, I deny Mr. Ingersoll's motion to dismiss plaintiff's claims because I find that they state a claim for which I can grant relief. Further, I deny Mr. Ingersoll's motion to stay discovery because I deny his motion to dismiss, the pendency of which he primarily relies upon in arguing

for a stay. Finally, I deny IPCO's motion for judgment on the pleadings with respect to count II of plaintiff's complaint because, as explained in my analysis of Mr. Ingersoll's motion to dismiss, I find that IPCO is not clearly entitled to a judgment on this count.

IT IS SO ORDERED.